[No. 21164.   In Bank.—January 29, 1895.]

THE PEOPLE, Respondent, *v.* R. P. CLARK, Appellant.

Criminal Law—Oral Instructions—Certificate by Court—Harmless Error.—It is the duty of the court, where oral instructions are given of its own motion, which are taken down by the reporter and afterwards written out, to certify them, so as to make them part of the record without a bill of exceptions; but the refusal of the court so to certify them is harmless error, where the instructions are embodied in a bill of exceptions, which forms part of the record upon appeal of the defendant, and are available to the appellant.

Id.—Robbery—Evidence—Identification of Defendant—Conversations.—For the purpose of identification of a defendant charged with robbery it may be shown that the witness identified one of the robbers as a man with whom he had a conversation prior to the robbery, at a certain place, in the presence of another person, without knowing the name of the man identified, and evidence of the original conversation with the defendant, and of a subsequent conversation between the witness and the other person as to the name of the person identified, is admissible, and can be productive of no injury, where no statement or declaration testified to was touching the commission of the offense, and the witness positively identified the defendant at the trial as one of the active participants in the robbery.

Id.—Understanding of Witness—Actions of Robbers.—A Chinese witness who was present at the time of the robbery, and did not understand what was said in English by the robbers, may properly testify to his understanding that they wanted him to go out, by the way they pointed their revolvers, and pointed toward the door.

Id.—Proof of Absence of Witness.—It is proper to allow one of the witnesses to the robbery to explain the absence of another of the witnesses

who was present at the time of the robbery, and not present at the trial, by showing where he was at the time of trial, and why he was absent.

Id.—Harmless Ruling—Leading Question.—Whether the court erred or not in putting a leading question to a witness will not be considered upon appeal, where the answer was favorable to the appellant.

Id.—Robbery of Chinamen—Money to be Paid as Rent—Knowledge of Third Parties.—Where the defendant is accused of robbing several Chinamen, who were partners and cotenants in the cultivation of land, evidence that other parties than the defendant had learned prior to the robbery that a payment of rent was about to become due, and was to be made by the Chinamen, is not admissible, such knowledge not being proved to have been brought home to the defendant prior to the robbery.

Id.—Harmless Error not Affecting Substantial Rights.—A technical error in the admission of erroneous evidence not affecting the substantial rights of the defendant, nor appearing by the record to have been prejudicial to the merits of his defense, is not ground for reversal of the judgment.

Id.—Cross-examination of Defendant.—The defendant may properly be cross-examined in regard to what he was doing in the neighborhood of the robbery, where, upon his examination in chief, he had admitted himself to have gone to that neighborhood on the night of the robbery.

Id.—Rebuttal of Defendant—Conversation.—Testimony may be received in regard to a conversation with the defendant just after his arrest as to where he was on the night of the robbery, for the purpose of rebutting the testimony of the defendant upon that point.

Id.—Variance—Ownership of Money Taken.—Where the information charged the defendant with having robbed a Chinese company of a specified sum, and the evidence shows that that sum was taken, but that only part of it belonged to the company, there is no such variance as entitles the defendant to an acquittal. It is not necessary that the property alleged to have been taken should, in its entirety, be the property of the person robbed.

Appeal from a judgment of the Superior Court of Tulare County and from an order denying defendant's motion for a new trial and from an order made after judgment.

The facts are stated in the opinion.

*Lamberson & Middlecoff*, and *C. L. Russell*, for Appellant.

The refusal of the court to make the indorsements upon the copies of oral charges and instructions was an order made after judgment affecting the substantial rights of the defendant, and was an error for which the

judgment should be reversed. (Pen. Code, sec. 1237. See Pen. Code, secs. 1093, 1127, 1176, 1207; Code Civ. Proc., sec. 187; *People* v. *January*, 77 Cal. 179; *People* v. *O'Brien*, 78. Cal. 41; *People* v *Rogers*, 81 Cal. 209; *People* v. *Keeley*, 81 Cal. 210; *People* v. *Clark*, 84 Cal. 573; *People* v. *Ah Lee Doon*, 97 Cal. 171; *People* v. *Beaver*, 83 Cal. 419; *Kearney* v. *Kearney*, 72 Cal. 597; *Somers* v. *Somers*, 81 Cal. 608; *Adams* v. *Andross*, 85 Cal. 609; *Shain* v. *Eikerenkotter*, 88 Cal. 15.) It was error for the court to admit the evidence as to the conversation between the witness Ah Jip and defendant, some days before the robbery, as such conversation was irrelevant, incompetent, and immaterial. (Code Civ. Proc., sec. 1868; 1 Greenleaf on Evidence, 14th ed., secs. 52, 448; Wharton on Criminal Evidence, 9th ed., secs. 29, 30; *People* v. *Vernon*, 35 Cal. 49; 95 Am. Dec. 49; *People* v. *Ah Lee*, 60 Cal. 85; *People* v. *Lane*, 100 Cal. 379.) The conversation between Ah Jip and B. W. Jauchius on the next morning after the robbery, before the arrest, was inadmissible, as it was not had in the presence of or hearing of defendant, and merely hearsay. (*People* v. *Griffin*, 52 Cal. 616; *People* v. *McCrea*, 32 Cal. 98; *People* v. *McLaughlin*, 44 Cal. 435; *People* v. *Ah Lee*, 60 Cal. 85; *People* v. *Ehring*, 65 Cal. 135; *People* v. *Johnson*, 91 Cal. 265; *People* v. *McNamara*, 94 Cal. 509; *People* v. *Wong Ark*, 96 Cal. 125; *People* v. *Lane*, 100 Cal. 379; 1 Greenleaf on Evidence, sec. 110; Wharton on Criminal Evidence, sec. 263, and note 266.) The court erred in overruling the objection of defendant to the question asked of the witness Ah Kong: " Could you understand by the way the men moved their revolvers, and the way they pointed with their hands, that they wanted you to go out"? as the question called for the understanding and impression of the witness, as drawn from the actions of others, and was therefore improper. (Lawson on Expert and Opinion Evidence, rules 66, 67; Wharton on Criminal Evidence, secs. 461, 462.) The court erred in admitting the evidence of Ah Leon as to why Ah Wi went to San Francisco. (Code Civ. Proc., sec. 1868.)

The court erred in receiving in evidence the conversation between Mary La Marche and Charley Faust and C. M. Lagenby and his father, and also the evidence of Joe La Marche concerning the same matter, as the evidence was of conversations out of defendant's hearing, not connected with the offense. (*People* v. *Powell*, 87 Cal. 348, 363; *People* v. *Griffin*, 52 Cal. 616; Code Civ. Proc., sec. 1868; *People* v. *Chuey Ying Git*, 100 Cal. 441.) The court erred in overruling defendant's objection to the question asked of the defendant, R. P. Clark, on cross-examination, as follows: "Q. What were you and that man Keeler doing down there in Chinatown"? (*People* v. *O'Brien*, 66 Cal. 602; *People* v. *Rozelle*, 78 Cal. 84, and cases cited; *People* v. *O'Brien*, 96 Cal. 180; *People* v. *Gallagher*, 100 Cal. 466; *People* v. *Crowley*, 100 Cal. 478.) The court erred in receiving the testimony of Joe La Marche in rebuttal, as to how many acres of the China garden were being cultivated. Such evidence was incompetent and immaterial, and, if offered to impeach the witness Lazenby, the contradiction was sought upon an immaterial matter, and was therefore improper. (1 Greenleaf on Evidence, sec. 462.) The court also erred in sustaining the objections of the people to the questions asked of this witness, Bachelder, on his cross-examination by defendant. (1 Greenleaf on Evidence, sec. 462; *People* v. *Devine*, 44 Cal. 453.)

*Attorney General William H. H. Hart, Deputy Attorney General Charles H. Jackson, District Attorney Maurice E. Power,* and *Daggett & Adams,* for Respondent.

HAYNES, C.—Appellant was convicted of the crime of robbery, and was sentenced to imprisonment in the state's prison for the term of twenty years, and this appeal is from the judgment and from an order denying defendant's motion for a new trial, and also from an order made after judgment. This latter order will be first noticed.

Several instructions were requested to be given to the jury by the prosecution and the defendant re-

spectively, upon each of which the action of the court, whether given, refused, or modified, was duly indorsed. In addition the court gave several oral instructions of its own motion, and these were taken down by the reporter, and afterwards written out; but the fact that they were given was not certified thereon by the court, so as to make them a part of the record. (*People* v. *January,* 77 Cal. 179; *People* v. *Ah Lee Doon,* 97 Cal. 171; Pen. Code, sec. 1176.)

Afterward, the defendant moved the court to certify these oral instructions, so as to make them part of the record, and the order denying this motion is the order above mentioned from which an appeal is taken.

The record does not disclose any ground for the refusal of the court to indorse upon such instructions the fact that they were given to the jury, nor can we conceive of any sufficient ground for such refusal.

But conceding that defendant's motion in that behalf should have been granted, it is not perceived that the defendant was prejudiced, or lost any substantial right. It is said by counsel for appellant that if the motion had been granted, and these instructions thus made part of the record, that an appeal could have been taken upon the judgment-roll without a statement or bill of exceptions.

It does not appear that he desired to appeal upon the judgment-roll or record without a bill of exceptions. He had made a motion for a new trial, and more than three months before had given notice of appeal from the order denying a new trial.

In any event the instructions in question are now in the record by bill of exceptions, and are as available to the defendant as though his motion had been granted.

The question put to the witness Ah Jip, as to what the defendant said to him some days before the robbery was proper for the purpose of identification. At the time of the robbery the witness identified one of the robbers as a man with whom he had had a conversation at a certain place in presence of another; but he

did not know the name of the man that he thus identified. Jauchius, in whose presence the conversation was had, was thus enabled to say that the defendant was the person referred to by Ah Jip.

The next morning after the robbery Ah Jip went to Jauchius to learn the name of the person he identified as one of the robbers, and was permitted to state the conversation had with him, which was, in substance, that Ah Jip asked the name of the man he had talked with, and was told that it was R. P. Clark.

It is contended that this conversation, not in the presence of the defendant, was hearsay and inadmissible. Appellant cites a very large number of cases in support of the general proposition that statements made by third persons after the commission of the offense, and not in the presence or hearing of the defendant, are inadmissible. These cases principally discuss the admissibility of declarations as part of the *res gestæ*. But here no statement or declaration touching the commission of the offense was made; and if it be conceded that it was immaterial how or from whom Ah Jip obtained the name of the defendant, the error was harmless, and could not possibly justify a reversal of the judgment. If Ah Jip had detailed the circumstance of the commission of the offense, and Jauchius had testified to these statements, it is obvious that a different question would be involved, and, in such case, the authorities cited by appellant would apply.

Or, had the statement been used, or designed to be used, to fix the identity of defendant as the perpetrator of the crime, the injury of the ruling would have been manifest. But it served no such purpose, since Ah Jip positively identified the defendant at the trial as one of the active participants in the robbery.

Ah Kong, a Chinaman who was present at the time of the robbery, and who did not understand what was said on that occasion in English, was asked the following question: " Could you understand by the way the men moved their revolvers, and the way they

pointed with their hands, that they wanted you to go out"? The objection was that it called for the understanding of the witness. The witness was permitted to answer, and said: "Yes, sir; they pointed their revolvers at us and pointed toward the door." The witness not only gave his understanding, but the facts upon which it was based. The question was not skillfully framed, but the answer was unobjectionable.

It is also contended that the court erred in permitting Ah Leon to testify as to why Ah Wi went to San Francisco.

Ah Wi was present at the time of the robbery, and was not present at the trial. It was competent to show where he was and why he was absent, as otherwise he should have been called as a witness.

Whether the question put to Dung Chung was leading or not need not be considered, as the answer was favorable to the defendant.

The robbery was committed on the night of September 8, 1893, at a house occupied by eleven Chinamen, who were partners and tenants cultivating land belonging to Joseph La Marche, who lived about half a mile from the house occupied by the Chinamen.

On the morning of the 8th, Mr. Faust and another man called at the house of La Marche, and Mrs. La Marche was called by the prosecution, and stated that she had a conversation with Faust and his companion in relation to the garden cultivated by the Chinamen. She was then asked to state the conversation, and to this the defendant objected. In a colloquy between counsel for the people and the court, which is incorporated in the bill of exceptions, it appears the defense had been permitted to show upon cross-examination that these Chinamen owed rent at the time of the robbery amounting to three hundred or four hundred dollars, and that the suggestion had been made that the pretended robbery was a job put up with other Chinamen, so that they could represent to La Marche that they had been robbed, and could not pay the rent. The testimony of

the Chinamen who were robbed also showed that four
men were concerned in the robbery, three of whom
came into the house, the fourth staying outside at
some little distance, and who was not distinctly seen.
The defendant, one of the three who came in, was
not masked. The other two were masked, and as to
them several of the Chinamen testified they could not
tell whether they were Chinamen, or negroes, or white
men. It was expressly stated by counsel for the prose-
cution that they had no testimony which would bring
the conversation of these men with Mrs. La Marche to
the defendant; that his object was to meet the argument
that only the Chinamen knew there was rent due and
unpaid, " and let it go to the jury as to who these other
white men were"; that the court had ruled that the cir-
cumstance that these Chinamen were owing a large
sum of money for rent should be shown, and that he
desired to show that white men also knew the fact.

The objection of defendant was thereupon overruled,
and the witness said that after informing them that Mr.
La Marche had gone to Tulare with a load of wheat, they
said they came to see about making a bargain to rent
the orchard; that she told them it was rented for three
or four years; that they inquired how many acres were
in vegetables, to which she replied she did not know,
that they could tell better by going to see it.   They then
wanted to know how much rent was paid, and she told
them nine hundred dollars a year; " that one payment
had been made, but before anybody got that orchard
the other payment would have to be paid either by the
Chinese or the one that bought them out"; and after
telling them where they could find her husband in
Tulare, they asked when the last payment became due,
and she told them it would be due the first of October.
They then left.

Mr. Faust and Mr. Lazenby, who was with him at the
time of the conversation with Mrs. La Marche, above
stated, were called by the defendant, and explained their
visit to the house of Mr. La Marche, by saying that

Lazenby desired to secure the land then occupied by the Chinamen for the purpose of cultivation, but, finding the rent to be high, concluded to make no further effort to obtain it, and they both testified that they did not mention the visit or any thing in connection with it to the defendant or any one until after the arrest of defendant.

I think it immaterial what others than the defendant had learned, or how they learned, that a payment of rent was about to become due from the Chinamen, unless such knowledge was brought home to the defendant prior to the robbery, and for that reason the testimony should have been excluded; and the question now to be determined is whether its admission was such an error as requires a reversal of the judgment and a new trial.

Section 1258 of the Penal Code is as follows: "After hearing the appeal the court must give judgment without regard to technical errors or defects, or to exceptions, which do not affect the substantial rights of the parties."

In *People* v. *Brotherton,* 47 Cal. 388, 404, it was said: "That a technical error has intervened at the trial is, therefore, not of itself enough to warrant a reversal.    The prisoners must go further, and affirmatively show in some way that their substantial rights have been injuriously affected by the error complained of.    The burden is upon them to do so."

This case was cited approvingly in *People* v. *Nelson,* 56 Cal. 82, and in *People* v. *Barnhart,* 59 Cal. 384.

In *People* v. *Brotherton, supra,* the defendant offered in evidence the testimony of one Howard taken upon a former trial, and it was excluded.    The record did not set out the testimony offered, nor state its substance, nor was its materiality shown; and the language used by the court must be read in the light of those facts. In *People* v. *Nelson, supra,* and *People* v. *Barnhart, supra,* the questions arose upon instructions to the jury; and, in the case last mentioned, the error was favorable to the defendant.

Here, however, the evidence was admitted against the

defendant's objection, and was heard by the jury, and is set out in the record. The defendant could not show that he was prejudiced otherwise than by the record, and that is before the court.

The visit of Faust and Lazenby to the ranch was upon the same day the robbery occurred. If the facts thus learned had been communicated to the defendant that day the testimony would have tended to strengthen the case against him; and, if it had been left doubtful whether said facts were or were not communicated to the defendant, we should not hesitate to say that the error was prejudicial. But the counsel for the people not only disclaimed in advance any effort to connect the defendant with the offered testimony, but Faust and Lazenby, whose credibility is not attacked, both testified that they did not communicate any thing they learned to the defendant, nor to any one, until after the robbery. That a robbery was committed at the time and place charged in the information is clear beyond question. Whether the defendant was one of the robbers was the real question in controversy, and upon that point his identification was conclusively shown. If the evidence objected to had been excluded, we do not see how the jury could have entertained a doubt of the fact of the robbery, or of the identity of the defendant as one of the robbers, unless they believed the testimony given to prove an *alibi*, and that testimony they did not believe, else the defendant would have been acquitted. We think the judgment should not be reversed for the erroneous reception of this evidence.

The objection to the question put to the defendant upon cross-examination, viz: " What were you and that man Keeler doing down there in Chinatown "? was properly overruled. The defendant had offered himself as a witness in his own behalf, and, in accounting for his whereabouts on the night the robbery was committed, said that he had, after leaving a certain other place, gone to Chinatown. The question was proper cross-examination, and was material.

The question as to his talk with Mr. Murray at the time of his arrest was proper, as it related to the same matter; that is, as to where he had been the night of the robbery.

The court erred in receiving in evidence the letter written by C. Lazenby, secretary of the "Tulare White Labor Union," to Mr. La Marche, August 28, 1893, notifying him to discharge all Chinese in his employ who had not a certificate of registration. Lazenby was called by defendant and testified in chief that he was a member of said organization, and stated the purposes of the union.

All this was immaterial, but was received without objection. The letter was offered as part of the cross-examination, but the objection that it was irrelevant and immaterial should have been sustained. The error, however, did not affect any substantial right of the defendant.

These remarks apply also to the testimony of Mr. La Marche in rebuttal. The evidence sought to be contradicted was immaterial.

The testimony of Bachelder in relation to a conversation with the defendant just after his arrest, as to where the defendant was the night of the robbery, was competent to rebut the testimony of defendant upon the same point.

The question put to the same witness by the defendant, upon cross-examination, as to what La Marche told him the night before the arrest, was properly excluded.

The information charged the defendant with having robbed the Wing Hing Company of two hundred and ten dollars. The evidence showed that sum was taken, but that only one hundred and seventy-five dollars belonged to the company. The court properly refused to instruct the jury that such variance entitled the defendant to an acquittal; nor did the court err in charging the jury that it was not necessary that the property alleged to have been taken was, in its entirety, the property of that company.

I see no ground upon which it can be said that the verdict is against law, or not justified by the evidence, nor any upon which it can be held that the punishment imposed by the court is unusual.

I advise that the judgment and orders appealed from be affirmed.

SEARLS, C., and BELCHER, C., concurred.

For the reasons given in the foregoing opinion the judgment and orders appealed from are affirmed.

MCFARLAND, J., HARRISON, J.,
GAROUTTE, J., VAN FLEET, J.,
HENSHAW, J.

Rehearing denied.