[No. 4993.    Decided May 2, 1904.]

THE STATE OF WASHINGTON, *Respondent*, v. FRANK FAIR, *et al., Appellants.*[1]

STATUTES — ENACTMENT — LEGISLATURE — EXTRA SESSION — RESTRICTING LEGISLATIVE ACTION—CRIMINAL LAW—VALIDITY OF SAVING CLAUSE FOR PENDING PROSECUTIONS.    Const., art. 3, § 7, authorizing the governor to call an extra session of the legislature for a particular purpose, which shall be stated in the call, does not restrict legislative action at such session to that purpose, nor has the governor power to do so, hence the legislature had power to enact Laws Ex. Sess. 1901, p. 13, saving pending criminal prosecutions in cases of repeal, at the extra session called for the purpose of amending the law relating to capital punishment.

CRIMINAL LAW—ROBBERY—INFORMATION—VARIANCE—OWNERSHIP OF PROPERTY TAKEN.    Under an information for robbery charging that the money taken was the property of M, there is no variance by proof that it belonged to a partnership of which M was a member, and that it was in his immediate and exclusive control, since Bal. Code, § 6944, so providing as to property stolen or fraudulently received, is applicable to robbery although robbery is not specifically mentioned.

[1]Reported in 76 Pac. 731.

CRIMINAL LAW—EVIDENCE OF ALIBI—SUFFICIENCY.   There is sufficient evidence to justify a conviction of robbery, where the defendant's evidence as to an alibi was contradicted by two witnesses who identified the defendant.

TRIAL—VERDICT—CONFLICTING EVIDENCE.   The verdict of the jury will not be disturbed upon conflicting evidence where there is testimony which, if true, is sufficient to justify it, and the trial court passed upon its sufficiency in refusing a new trial.

APPEAL—PARTIES—WITNESSES NOT ENTITLED TO APPEAL—DISALLOWANCE OF COSTS.   Witnesses for the defendant in a criminal case, whose fees were disallowed by the lower court, are not parties to the action, and cannot appeal from the order of the court disallowing their fees.

Appeal from a judgment of the superior court for Spokane county, Kennan, J., entered August 29, 1903, upon a trial and conviction of the crime of robbery.   Affirmed.

*Robertson, Miller & Rosenhaupt,* for appellants.

*Horace Kimball* and *R. M. Barnhart,* for respondent.

ANDERS, J.—On and prior to the night of Saturday, April 4, 1903, Robert G. Miller and his brother, under the firm name of Miller Bros., were conducting a meat market on East Sprague avenue, in the city of Spokane. About nine o'clock on the evening of that date, and while Robert G. Miller and Charles Johnson, the driver of the market wagon, were preparing to close the market for the night, three masked men, with pistols in their hands, suddenly entered the room, "held up" Miller and Johnson, and took from the cash register—which was on the corner of the counter—and carried away, $70 belonging to said Robert G. Miller and his brother. At the time of the robbery, the market and its contents, including the cash register and the money therein, were in the care and possession of said Robert G. Miller.

Some time in June following, Frank Fair and Sam Eder were arrested and identified as being two of the

persons who committed the offense.    The third and un-
known man, the one who rifled the cash register, has never
been apprehended or discovered.    Subsequently to the
arrest of Fair and Eder, the prosecuting attorney filed
an information against them in the superior court for
Spokane county, the charging part of which is as follows:

"That the said defendants, Frank Fair and Sam Eder,
on the 4th day of April, 1903, in the county of Spokane,
and state of Washington, then and there being, did then
and there wilfully, unlawfully, feloniously, and forcibly
take from the immediate presence of Robert G. Miller, and
against his will, a certain article of value, to wit, seventy
dollars in money of the value of seventy dollars, the prop-
erty of and belonging to Robert G. Miller, by then and
there wilfully, unlawfully, and feloniously pointing at
said Robert G. Miller a loaded revolver thereby putting
said Robert G. Miller in fear."

At his own request the defendant Fair was tried sepa-
rately, and at the trial he set up an alibi, viz., that at the
time of the robbery he was at the town of Prosser, Wash-
ington, which, according to the evidence, is about 186
miles distant from the city of Spokane.    To establish this
defense the defendant testified, and produced several wit-
nesses who also testified, that he was at Prosser at the
time the robbery with which he was charged was com-
mitted.    The jury, however, found the defendant guilty
as charged, and the court, after denying a motion in arrest
of judgment, and also a motion for a new trial, sentenced
the defendant to imprisonment in the penitentiary for
the term of fifteen years.    To reverse this judgment and
sentence, the defendant has appealed.

Section 829 of the Code of Washington, commonly
known as the Code of 1881 (§ 7103, Bal. Code), defined
the crime of robbery, and provided that every person con-
victed of that offense should be punished by imprison-

9-35 WASH.

ment in the penitentiary not less than one nor more than twenty years. This section of the statute was amended by an act of the legislature, approved February 5, 1903, which changed the minimum imprisonment for the offense from one to five years. Laws 1903, p. 5. This amendatory statute, not carrying an emergency clause, did not take effect until after the commission of the crime with which appellant is charged. Neither did it contain a saving clause as to pending prosecutions, or as to offenses committed under the old statute. In 1901, however, the legislature, at an extraordinary session, passed a general act saving prosecutions in cases of the repeal or amendment of criminal statutes. Laws, Ex. Sess. 1901, p. 13.

The trial of the appellant occurred on July 17, 1903, which was after the amending statute of the 5th of February became effective. And it is contended by the learned counsel for appellant that, at the time of the trial, there was no law in existence defining the crime of robbery, or prescribing the punishment therefor, and that the trial court erred in holding the contrary. This contention is based upon the notion that the general act above mentioned, of June 13, 1901, is invalid for the reason that the legislature had not the power to pass it at that extraordinary session. Section 7 of art. 3 of the state constitution, relating to the powers of the governor, provides as follows:

"He may, on extraordinary occasions, convene the legislature by proclamation, in which shall be stated the purposes for which the legislature is convened."

By virtue of the power thus vested in him by the constitution, Governor Rogers convened the legislature in extraordinary session on June 11, 1901, and the purpose for which it was so convened was stated in his proclamation as follows:

"The purpose for which the legislature is called together is that it may pass upon, confirm or amend the law relating to capital punishment."

It was the exclusive province of the governor, under the constitution, to determine whether an occasion existed of sufficient gravity to require an extra session of the legislature, and his conclusion in that regard is not subject to review by the courts.    *Farrelly v. Cole,* 60 Kan. 356, 56 Pac. 492, 44 L. R. A. 464.    That such is the law is not disputed by counsel for appellant, but they do earnestly insist that the legislature, at its extra session, had no right to legislate upon any subject not mentioned in the governor's proclamation.    And, if this position is well taken, it necessarily follows that the general saving statute above mentioned is void, and constituted no authority whatever for the prosecution and punishment of appellant.    The solution of this question depends upon the effect of the constitution on ·the power of the legislature at its extra session.

It seems to be assumed, on behalf of the appellant, that the provision of the constitution above quoted restricted legislative action to matters specifically designated by the governor in his proclamation, and the following authorities are cited in support of this proposition: Sutherland, Stat. Constr., § 26; *Davidson v. Moorman,* 2 Heisk. 575; *Jones v. Theall,* 3 Nev. 233; *Wells v. Missouri Pac. R. Co.,* 110 Mo. 286, 19 S. W. 530; *In re Governor's Proclamation,* 19 Colo. 333, 35 Pac. 530.    It is true, it was held in each of those cases that the particular statute or act in question was void because the legislature was inhibited by the express terms of the constitution from passing it.    For instance, the constitutional provision involved in the Nevada case was the following:

"The governor may, on extraordinary occasions, convene the legislature by proclamation, and shall state to both houses, when organized, the purpose for which they have been convened, and the legislature shall transact no legislative business except that for which they were specially convened, or such other legislative business as the governor may call to the attention of the legislature while in session."

The decisions in the other cases cited were based upon constitutional provisions substantially like that of Nevada, and their soundness can hardly be doubted. The rule announced by them, as to the power of the legislature when assembled in extraordinary session, is tersely and correctly stated by Sutherland in his work on Statutory Construction at § 26 (cited by appellant), as follows:

"When convened in extra session and limited by the constitution to business for which the session was specially called, all acts passed relating to other subjects will be void."

But, inasmuch as our constitution does not restrict the legislature, at its extra sessions, to the consideration of the particular business for which it was convened, or to such other matters as may be called to its attention, while in session, by the governor, it would seem that the authorities relied on by appellant are not applicable to the case at bar. All legislative power is declared by the state constitution to be vested in a senate and house of representatives, or, in other words, in "the legislature of the state of Washington." Const., art. 2, § 1. But such powers are not specially defined by the constitution, nor are they, strictly speaking, granted by that instrument.

"The people in framing the constitution committed to the legislature the whole law-making power of the state, which they did not expressly or impliedly withhold. Plenary power in the legislature, for all purposes of civil government, is the rule. A prohibition to exercise a particu-

lar power is an exception. In inquiring, therefore, whether a given statute is constitutional, it is for those who question its validity to show that it is forbidden." *People v. Draper,* 15 N. Y. 532, 543.

It is stated in a recent legal publication that "the legislature of a state has power to enact any laws that are not expressly, or by necessary implication, prohibited, either by the federal constitution or by the constitution of the state enacting the law, the constitutionality of which is called in question." 8 Cyc. p. 806. Many cases are cited which hold the doctrine thus announced, and none has been cited by counsel, or discovered by us, announcing a different rule. The question of the extent of legislative power is fully and intelligently discussed in *Kimball v. Grantsville City,* 19 Utah 368, 57 Pac. 1, 45 L. R. A. 628; *State ex rel. Nichols v. Cherry,* 22 Utah 1, 60 Pac. 1103; and *People v. Richmond,* 16 Colo. 274, 26 Pac. 929. See, also, Cooley, Const. Lim. (6th ed.), p. 197.

The legislature was lawfully convened by the governor and, not being limited by the constitution to the consideration of the legislative business for which it was called together, we think it had ample power and authority to enact the general saving statute of June 13, 1901, and it, therefore, follows that that act is constitutional and valid. While the constitution empowers the governor to call extra sessions of the legislature, and defines his duty respecting the same, it does not authorize him to restrict or prohibit legislative action by proclamation or otherwise. *Morford v. Unger,* 8 Iowa 82; *Farrelly v. Cole,* 60 Kan. 356, 56 Pac. 492, 44 L. R. A. 464; Cooley, Const. Lim., *supra.*

It is insisted, on the part of the appellant, that there was a variance between the pleading and the proof in

regard to the ownership of the property designated in the information. It will be observed that the information alleged that the money taken was the property of Robert G. Miller. The evidence showed, however, that it really belonged to a copartnership of which said Robert G. Miller was a member, but that at the time of the robbery it was in his presence, and under his immediate and exclusive control. Was this proof sufficient to sustain the allegation of the ownership of the property described in the information? We have no doubt that it was. Our statute (Bal. Code, § 6944, Pierce's Code, § 2016) provides:

"In the prosecution of any offense committed upon, or in relation to, or in any way affecting any real estate, or any offense committed in stealing, embezzling, destroying, injuring, or fraudulently receiving or concealing any money, goods, or other personal estate, it shall be sufficient, and shall not be deemed a variance, if it be proved on the trial that, at the time when such offense was committed, either the actual or constructive possession, or the general or special property, in the whole or any part of such real or personal estate, was in the person or community alleged in the indictment or other accusation to be the owner thereof."

Robbery is a compound or aggravated larceny, and larceny is only another name for stealing or theft. And, says Mr. Bishop:

"The indictment for robbery charges a larceny, together with the aggravating matter which makes it, in the particular instance, robbery. For example, the property is described the same as in larceny; the ownership is in the same way set out, and so of the rest." 2 Bish., New Cr. L., §1159.

Although robbery is not specifically mentioned in the statute last quoted, we think it is clearly within its spirit, and that that section of the code is therefore applicable

to the case at bar. Under this statute this court has held that, if the actual or constructive possession of a building is in the person alleged in an information for arson to be the owner, it is no variance if it be proved on the trial that he was in such possession at the time of the commission of the offense, although the actual ownership be shown to be in another. *State v. Biles,* 6 Wash. 186, 33 Pac. 347. And we see no reason why the same rule should not be applied in this case.

In *People v. Clark,* 106 Cal. 32, 39 Pac. 53, the information charged the defendant with having robbed the Wing Hing Company of $210. The evidence showed that sum was taken, but that only $175 belonged to the company. And upon the question whether there was a variance between the allegation and proof of ownership, the supreme court of the state said:

"The court properly refused to instruct the jury that such variance entitled the defendant to an acquittal; nor did the court err in charging the jury that it was not necessary that the property alleged to have been taken was, in its entirety, the property of that company."

That case would seem to be directly in point here. See, also, *State v. Adams,* 58 Kan. 365, 49 Pac. 81; and *Brooks v. People,* 49 N. Y. 436, 10 Am. Rep. 398.

It is claimed by appellant that the court erred in refusing to grant a new trial on the ground that the evidence is not sufficient to justify the verdict of the jury. We have carefully examined and considered all the evidence in the record, and we are not convinced that it was not sufficient to warrant the jury in returning a verdict of guilty. That a robbery was committed at the time and place designated in the information, there can be no reasonable doubt. The prosecuting witness, Miller, and Charles Johnson testified that the appellant was one of the

persons who committed the offense; and Detective Mc-
Dermott, who had known the appellant for several years,
testified that he saw him in Spokane at 8 o'clock in the
evening of the robbery.  This evidence on the part of
the state was contradicted by appellant, who, as a witness
in his own behalf, testified that he was not in the butcher
shop of Miller Brothers, or in Spokane, at the time of
the robbery, but was then in Prosser, nearly 200 miles
from the scene of the robbery.  Four other witnesses were
introduced by the defense, each of whom testified to the
same effect.  But it was the exclusive province of the
jury to weigh the evidence, and, in so doing, to determine
the credibility of the various witnesses.  And it is evi-
dent that the jury concluded that the witnesses for the
defense were not entitled to credit, and that those for the
prosecution spoke the truth.  Moreover, the trial judge
must have been of the same opinion, for he passed upon
the sufficiency of the evidence in determining the motion
for a new trial.  And, under such circumstances, this
court will not disturb the verdict of the jury, where there
is testimony which, if true, is sufficient to justify it.
*State v. Kroenert*, 13 Wash. 644, 43 Pac. 876; *State v.
Maldonado*, 21 Wash. 653, 59 Pac. 489; *State v. Mitchell*,
32 Wash. 64, 72 Pac. 707; *State v. Ripley*, 32 Wash. 182,
72 Pac. 1036.

We perceive no error in the record, and the judgment
as to appellant Frank Fair is therefore affirmed.

The witnesses for the defendant and appellant Fair,
viz., Frank Rutledge, O. Johnson, G. L. Eichenhauer,
and J. H. Bailey, have appealed from the order of the
trial court disallowing their fees for attendance on the
trial, and for mileage, as certified by the clerk.  The
respondent moves to dismiss this pretended appeal for
the reasons, among others, that none of said persons was

a party to this action in the trial court; that said persons
are not proper parties appellant herein, and that this court
has no jurisdiction of the subject matter of the attempted
and pretended appeal of said persons.    This motion must
be granted.    Our statutes provide that, "any *party* ag-
grieved may appeal to the supreme court in the mode
prescribed in this title, . . ."    (Laws 1901, p. 28);
that "any *party* aggrieved by the taxation of costs by the
clerk of the court may, upon application, have the same
retaxed by the court in which the action or proceeding is
had" (Bal. Code, § 5185, Pierce's Code, § 1122); and
that "the party commencing the action shall be known
as the plaintiff and the opposite party the defendant"
(Bal. Code, § 4794, Pierce's Code, § 251).    As these so-
called appellants were not parties to the action at any
stage of the proceeding, it seems clear to our minds that
they were not authorized by law to prosecute an appeal
from any order or judgment made or rendered by the
court therein.    They were simply witnesses at the trial
of the cause, and were therefore in no sense parties to the
action, or to the ruling of the court rejecting their claim
for witness fees.  *Fiedelday v. Diserens,* 26 Ohio St. 312;
*Perkins v. Delta etc. Co.,* 66 Miss. 378, 6 South. 210,
See, also, *Nicol v. Skagit Boom Co.,* 12 Wash. 230, 40
Pac. 984, and *Montgomery v. Leavenworth,* 2 Cal. 57.

For the foregoing reasons the appeal of Rutledge, John-
son, Eichenhauer, and Bailey is dismissed.

Fullerton, C. J., and Mount, Dunbar, and Hadley,
JJ., concur.