[No. C. D. 632. *En Banc.* March 24, 1924.]

*In the Matter of the Proceedings for the Disbarment of* E. S. SNELLING.[1]

ATTORNEY AND CLIENT (7)—GROUNDS FOR SUSPENSION—EVIDENCE—SUFFICIENCY. Where an attorney procured his appointment as a notary public, knowing that he was not a qualified person, and not an elector of the state, he should be suspended; but a suspension for one year will be reduced to the period of three months, where it appears that no one was injured and that a suspension for one year would be equivalent in effect to a disbarment (PEMBERTON, J., dissenting).

Proceedings filed in the supreme court June 2, 1923, for the disbarment of an attorney, upon findings of the state board of law examiners against the accused. Judgment of suspension.

*Vance & Christensen* (*Welsh & Welsh, Geo. T. Swasey, John J. Langenbach,* and *Herman Murray,* of counsel), for accused.

*The Attorney General* and *R. G. Sharpe, Assistant,* for the State.

HOLCOMB, J.—Upon a complaint and supplemental complaint, five specific charges of misconduct in violation of his oath as an attorney at law were filed and duly heard by the board of law examiners against E. S. Snelling, an attorney practicing law at South Bend, Washington.

Upon the hearing, after considering the matters before them, the board found that the first, second, third, and fifth causes of action were not sustained by the evidence, and that the fourth cause of action was sustained.

The fourth cause of action was that, on April 2, 1920, the Governor of the state of Washington issued to Snelling a commission as a notary public; that this

[1]Reported in 224 Pac. 600.

commission was issued upon the petition of twenty freeholders of Pacific county; that the petition stated that E. S. Snelling was a reputable citizen of Pacific county, and an elector of the state of Washington; that, at the time of the issuance of such commission, the law of the state of Washington provided that notaries public should have the qualifications of electors. The qualifications for electors were that they must be citizens of the United States, and must have lived in the state of Washington for one year, and in the county ninety days; that, prior to 1917, the respondent was a resident and elector in the state of Washington, residing at Chehalis; from 1917 to December 25, 1919, he resided with his family at St. Helens in the state of Oregon, and had ceased to be a resident and elector in the state of Washington; about December 25, 1919, he came to South Bend, Washington, with the intention of residing there, and took up his residence at South Bend. His family came from Oregon to Washington in June, 1920. In March, 1920, the foregoing petition for the appointment of respondent as a notary public was circulated by respondent at South Bend, Washington, and twenty persons signed the same. At the time of its circulation, respondent was not an elector in the state of Washington, and he was not qualified to hold the office of a notary public. He knew that he was not qualified to hold such office, and he represented to the signers of such petition that he was qualified to hold the office of notary public; that his attention was expressly called to the fact that he was not qualified to hold the office, but notwithstanding that fact he caused the petition to be circulated, and obtained thereon from the Governor his commission; that such commission was obtained by deception and fraud; that he is acting under such commission, and continues so to act; that the conduct of respondent

in the above respects was dishonest, unethical, and unprofessional. Upon these findings, the board unanimously recommended that the respondent be suspended from the practice of law in the state of Washington for one year.

The findings of the board of law examiners are fully and completely sustained by the record. In fact there is little dispute or denial on the part of respondent that he obtained his commission as notary public without having the qualifications necessary therefor at the time it was issued. He testified that he thought but little about it; that a bank which he was helping to organize to do business in South Bend desired a notary public in connection therewith, and that he be such notary public, and that a representative of the bank circulated the petition. But when it had been circulated, respondent received it into his possession and forwarded it to the secretary of the Governor. The petition clearly stated at the top that the freeholders certified that they were well acquainted with E. S. Snelling, and that he was a reputable citizen of the county and an elector of the state of Washington. Consequently, even if the petition had been circulated and signed on behalf of respondent, when it was forwarded by him to the office of the Governor he knew that he was not an elector in the state of Washington. He therefore should have withheld his petition. His presentation thereof was an assent to the misrepresentation. He testified that what he did was done in the utmost good faith; but he also admitted that he knew at the time that he was not an elector in the state of Washington, but that he had come here with the intention of becoming such, and to permanently reside in the state of Washington.

We are therefore of the opinion that the findings of the board must be sustained, but we are of the opinion

that, since no one is shown to be injured by the misconduct of respondent, the correction imposed upon him is somewhat too harsh.  It is true he deserves censure, for a lawyer should know better than to do such things.  If he does not, or is willing to take such chances by treating matters of compliance with the statutory law lightly, he is not a safe person to advise clients.  But if he is to be suspended from practice at all, as a corrective and disciplinary measure, a year's suspension is tantamount to permanent disbarment, for respondent, who is practicing in a comparatively small community, will have lost all the practice that he ever had there during the term of a year.

We are therefore of the opinion that a sufficient punishment and discipline is that he be censured and reprimanded by the court, as he hereby is, and suspended from the practice of law for a period of three months from the date of the filing hereof.

MAIN, C. J., TOLMAN, PARKER, BRIDGES, FULLERTON, MITCHELL, and MACKINTOSH, JJ., concur.

PEMBERTON, J. (dissenting)—I dissent.  From reading the record in this case I am satisfied that E. S. Snelling, at the time of receiving his appointment as notary public, did not appreciate but what he was eligible to that office.  He has been a practicing attorney of this state for the past eighteen years, was prosecuting attorney of Wahkiakum county for one term, thereafter lived in Portland for a few years, after which he returned to this state, residing at Chehalis until 1917, when he again went to Oregon and remained there until 1919, at which time he moved to South Bend, Washington.  He testified that he intended South Bend to be his home and considered that he was a *bona fide* resident therein; that, having been a notary in the state prior thereto, he assumed that he

was qualified to hold that office, and sent the following application to the governor of the state, without thinking of the necessity of making an examination of the statute as to the required qualifications:

"To the Governor of Washington:

"We, the undersigned freeholders of Pacific county, State of Washington, hereby certify that we are well acquainted with E. S. Snelling of South Bend, Washington, that he is a reputable citizen of said county; that he is an elector of the State of Washington, and we hereby recommend him to the Governor as a proper person to receive appointment as Notary Public.

"Dated at South Bend, Wash., this 15th day of March, 1920."

There is only one witness to the contrary, and her testimony is inconsistent with the other facts and circumstances and is denied by Mr. Snelling. The *Attorney General* makes the following contention:

"But were we to ignore entirely the testimony of Mrs. Rose, still we respectfully insist that the respondent cannot be excused by the fact, if it were a fact, that he had not examined the statute. Ignorance of the law does not excuse the layman, and certainly cannot be held to excuse an attorney at law who had even served as a prosecutor in this state."

There are so many laws that no one can remember all of them. It is the ability to find the law that determines the efficiency of the lawyer. The judges themselves cannot remember all the laws. The court overlooked a statute in the case of *State v. Hanover,* 55 Wash. 403, 104 Pac. 624, 107 Pac. 388, and upon rehearing said that this statute "was inadvertently omitted from consideration." This same statutory provision had been called to the attention of the court on two prior occasions. *State v. Fair,* 35 Wash. 127, 76 Pac. 731, 102 Am. St. 897; *State v. Ames,* 47 Wash. 328, 92 Pac. 137.

I am satisfied that Mr. Snelling did overlook the fact

that it was necessary for him to be a resident of the state for a year prior to his appointment as a notary public. There is no one claiming that he has not properly administered the affairs of the office. The acts performed by him are entirely valid under the holding in the case of *State v. Fountain*, 14 Wash. 236, 44 Pac. 270, wherein we said:

"It is true, that every officer must be elected or appointed, as the case may be, in the manner provided by law, but where an individual is appointed by the proper authority to an office and enters upon the discharge of its duties, he is a *de facto officer*, and his acts are valid and binding, although he may not possess some of the requisite qualifications to hold the office."

The only section under which the recommendation of the board can be sustained is Rem. Comp. Stat., § 139-14 [P. C. § 166], as follows:

". . . 6. For the commission of any act involving moral turpitude, dishonesty or corruption, whether the same be committed in the course of his relations as an attorney or counselor at law, or otherwise, and whether the same constitute a felony or misdemeanor or not; and if the act constitute a felony or misdemeanor, conviction thereof in a criminal proceeding shall not be a condition precedent to disbarment or suspension from practice thereof."

There can be a violation of law without involving moral turpitude. Even in a case involving a felony we said:

"That question, after all, must be determined from the inherent immoral nature of the act, rather than from the degree of punishment which the statute law imposes therefor, though the latter may be some indication of the public conscience relating thereto." *In re Hopkins,* 54 Wash. 569, 103 Pac. 805.

I am satisfied that the record in this case fails to show that E. N. Snelling has committed an act involving moral turpitude, dishonesty or corruption.