51 Wn.2d 193 (1957)
316 P.2d 907
In the Matter of the Welfare of JACK CHARLES LEWIS.
THE STATE OF WASHINGTON, on the Relation of Jack Charles Lewis et al., Plaintiff,
v.
THE SUPERIOR COURT FOR KING COUNTY, Michael K. Copass, Judge, Respondent.[1]
No. 34063.
The Supreme Court of Washington, Department Two.
October 25, 1957.
P.R. McIntosh, for relators.
N.P. Moats, for respondent.
Muriel Mawer, Charles O. Carroll, and Charles Z. Smith, amici curiae.
*195 ROSELLINI, J.
We are asked to review, on certiorari, proceedings involving the alleged delinquency of a fourteen-year-old boy, which culminated in an order directing that the boy should be made a ward of the court and placed in the Luther Burbank custodial school.
The relators, the boy and his parents, have raised a number of procedural objections and also challenge the constitutionality of the juvenile court act, RCW 13.04.010 et seq. A brief outline of the procedure that was followed will expedite the disposition of these questions.
On August 24, 1956, a petition was filed in the juvenile court, alleging Jack Charles Lewis to be a delinquent child. Notice and summons were served on the parents on September 4, 1956. On September 10th, the matter came on for hearing. The boy and his parents appeared through their attorney, filed a motion for transfer of the action, and demurred to the petition. The cause was then assigned to the presiding judge. On September 11th, an order was entered appointing Miss Muriel Mawer guardian ad litem, and on September 14th, N.P. Moats was appointed attorney for the petitioner, a probation officer, the prosecuting attorney's office having declined a request by the court to represent him. A motion made by the guardian ad litem for physical and psychiatric examination of the boy was denied on September 14, 1956.
On September 18th, the cause came on for hearing before Honorable Michael K. Copass, one of the judges of the superior court. Over the objection of the attorney for the relators, the public and the witnesses were excluded from the courtroom. Motions to quash the appointment of the special prosecutor and the guardian ad litem were denied. The demurrer to the petition was overruled, but when it was renewed after the first witness was called, the court sustained the demurrer and, with the consent of the relators' attorney, gave the petitioner five days in which to amend. The parents were ordered to reappear with the boy on October 15, 1956. On September 26th, an amended petition was filed, and on October 15th, the matter came on for hearing with all of the interested parties present.
*196 The relators demurred to the amended petition on the ground that the alleged facts constituting delinquency were not stated in sufficient detail to enable them to defend against the accusations and on the ground that the verification on the petition did not show in what state and county it was signed. It having been shown to the satisfaction of the court that this was a stenographic oversight, the court allowed counsel for the petitioner to amend the petition to show that it was signed and verified in the state of Washington, county of King. The demurrer was overruled, and a motion to strike or, in the alternative, to make more definite and certain was denied.
A number of neighbors of the relators were called, who testified to the boy's habitual use of vulgar and profane language, to his various acts of intimidation of children in the neighborhood, and to conduct which indicated that young Lewis had little respect for the rights and dignity of others. A boys' club supervisor testified that, because he disrupted the games of other boys and used obscene language, it had become necessary to exclude him from the club; and there was evidence that he had been transferred from one school to another, on request of his teachers and principals, and that eventually he was removed from school and given a home instructor. His difficulties at school involved behavior problems and also the fact that he was subject to a mild convulsive disorder. The latter, however, had been brought under satisfactory control by the use of medication prescribed by a neurologist. At the time of the hearing, he was not in school and was not receiving home instruction. He had at one time been taken to the Ryther Child Center, at the suggestion of the school authorities, and had been placed on the waiting list there.
The parents testified that they had no knowledge of his use of obscene language and that no complaints had been made to them about this. They testified that one neighbor had pulled his ear and another had turned the hose on him; that the police had unjustly accused him of taking another boy's bicycle without permission and had induced him to sign a confession which he had not read. It seemed to be *197 their opinion that all of the complaints against him were unfounded and that he was just an unusually active and aggressive boy.
The boy admitted the use of obscene language, but denied that he knew what it meant and also denied that he knew the meaning of a vulgar sign which he had made in the presence of several of the witnesses. He admitted molesting a retarded child in the neighborhood and also admitted several other acts of intimidation.
No other witnesses were called to refute the testimony of those called by the petitioner.
The court concluded that the boy was in need of help and asked the parents and the guardian ad litem to draw up suggested programs whereby the boy's problems could be corrected and he could be returned to school. On the appointed day, the two programs were submitted. The parents proposed to continue dealing with the boy as they had in the past and offered nothing constructive. The guardian ad litem had contacted the school authorities and the Ryther Child Center and obtained the consent of the latter to accept him immediately as an outpatient if the parents would co-operate. She recommended that his home study program should be reinstated and should continue until such time as his emotional problems had been corrected and he was able to return to school.
The court approved this program and asked the co-operation of the parents. They persisted in their view that there was nothing wrong with the boy and expressed their unwillingness to co-operate in the program. The court thereupon ordered the boy committed to the Luther Burbank school. However, upon being informed that the parents proposed to apply for a writ of certiorari, the trial court suspended its order pending this court's determination of the matter, contingent upon the parents' following the program proposed by the guardian ad litem during this interval. This they agreed to do.
Relators first object to the exclusion of the public from the hearing, contending that the provision of RCW 13.04.090, which permits the court to exclude the public in juvenile *198 court proceedings, violates Art. I, § 10 of the state constitution, which provides: "Justice in all cases shall be administered openly, and without unnecessary delay."
[1, 2] The purpose of excluding the public from proceedings such as these is, of course, to protect the child from notoriety and its ill effects. This court, along with by far the majority of other courts in the United States, early recognized that the purpose of statutes such as ours is not to punish the child, but to inquire into his welfare where reasonable cause exists, and to provide an environment which will enable him to grow into a useful and happy citizen, where his parents have failed in that regard. In In re Lundy, 82 Wash. 148, 143 Pac. 885, we said:
"The policy underlying this law is protection, not punishment. Its purpose is not to restrain criminals to the end that society may be protected and the criminal perchance reformed; it is to prevent the making of criminals."
This language was quoted with approval in Weber v. Doust, 84 Wash. 330, 146 Pac. 623, which overruled Weber v. Doust, 81 Wash. 668, 143 Pac. 148, and held that an officer who arrested and detained a person thought to be a delinquent child, without any complaint being filed or summons issued therefor as required by the act, was not guilty of false imprisonment if he acted in good faith and in furtherance of the purposes of the act and for the welfare of the child.
Statutes similar to ours have been universally upheld over objections based upon constitutional grounds. The Pennsylvania supreme court declared in In re Holmes, 379 Pa. 599, 109 A. (2d) 523, that juvenile courts are not criminal courts, and constitutional rights granted to persons accused of crime are not applicable to children brought before such a court. It was further held that a child who was questioned in the same manner and spirit as a parent might have questioned his child was not "compelled" to give a self-incriminating answer to a question.
In the following cases, it was held that the failure to provide a jury in juvenile court proceedings did not render the acts in question unconstitutional: Cinque v. Boyd, 99 *199 Conn. 70, 121 Atl. 678; Ex Parte Januszewski, 196 Fed. 123; Wissenburg v. Bradley, 209 Iowa 813, 229 N.W. 205, 67 A.L.R. 1075; and In re Gomez, 113 Vt. 224, 32 A. (2d) 138. It was held in People v. Lewis, 260 N.Y. 171, 183 N.E. 353, 86 A.L.R. 1001, certiorari denied, 289 U.S. 709, 77 L.Ed. 1464, 53 S.Ct. 786, that the procedural safeguards provided by constitution and statute are not necessary in juvenile court proceedings, which do not involve criminal charges. Objections that such statutes were unconstitutional in that they created new courts were held without merit in Commonwealth v. Fisher, 213 Pa. 48, 62 Atl. 198, 5 Ann. Cas. 92; and Lindsay v. Lindsay, 257 Ill. 328, 100 N.E. 892, 45 L.R.A. (N.S.) 908, Ann. Cas. 1914A, 1222. It was also held in Commonwealth v. Fisher, supra, that the juvenile court act was not objectionable as class legislation, and in Lindsay v. Lindsay, supra, that the parental restraint exercised by the court was not a deprivation of personal liberty. The latter principle was also recognized by this court in Weber v. Doust, 84 Wash. 330, 146 Pac. 623. See, also, annotations in 60 A.L.R. 1342 and 67 A.L.R. 1082.
One case is cited by the relators in support of their argument that the right to a public trial, guaranteed in criminal cases where justice (that is, punishment) is meted out, applies in a juvenile court proceeding, where there is no issue of crime and no punishment. In that case, State v. Marsh, 126 Wash. 142, 217 Pac. 705, we held that an adult charged under the juvenile court law with the crime of contributing to the delinquency of a minor was entitled to a public trial before he could be punished; but we did not question the validity of the provision authorizing the court to exclude the public in cases involving children, as applied to juvenile delinquency hearings.
Our research, while it has revealed many cases where other constitutional guarantees were made the basis for attacks upon juvenile court acts, has produced only one case where the question of the right to a public trial was raised. In Dendy v. Wilson, 142 Tex. 460, 179 S.W. (2d) 269, 151 A.L.R. 1217, the Texas court, in accord with the overwhelming majority of courts which have held that a *200 juvenile court hearing is not a criminal proceeding and therefore is not subject to those limitations which are designed to protect persons accused of crime, sustained the provision of the juvenile court act which authorized the court to exclude the public from its hearings, and commended the beneficent purpose of this provision.
[3] It would have been easier for the court, in this case, to accede to the relators' wishes and ignore the welfare of the child; but the court, recognizing the harm that would come to the child if his neighbors heard all of the testimony against him or if newsmen picked up the story, and recognizing further that no good purpose would be served by having casual loiterers in the courtroom, made its ruling to protect the child rather than to please his parents, who admitted they had no good reason for requesting a public trial. We see no constitutional objection to the provision of the statute which allowed the court to make that ruling.
It is next urged that the court abused its discretion in appointing a guardian ad litem to represent the interests of the child. The authority for such an appointment is found in RCW 13.04.070, which provides, inter alia:
"The parents of the child, if living, and their residence is known, or its legal guardian, if there be one or if there is neither parent nor guardian, or if his or her residence is not known, then some relative, if there be one, and his residence is known, shall be notified of the proceedings; and in any case the judge shall appoint some suitable person or association to act in behalf of the child."
[4] We held in State ex rel. Raddue v. Superior Court, 106 Wash. 619, 180 Pac. 875, that the court has the duty to make such an appointment only where the child's guardian or parents are not present. However, that case is not authority for the proposition that the court has no power to appoint a representative for the child if the parents are present. It may often happen that the interests and desires of the parents may conflict with the interests of the child; and in such circumstances they would be in no position to adequately represent the child at the hearing. This case is an example. The major function performed by the guardian *201 was the study and preparation of a plan for the correction of the child's problem. The parents failed to suggest a realistic plan and at first refused to co-operate in the plan adopted by the court. It can readily be seen that the guardian served a beneficial purpose. She took no active part in the hearing on the issue of delinquency, and the rights of the parents were in no way prejudiced by her presence. We do not think that the statute contemplates that the appointment of a person to represent the interests of the child should divest the parents of any rights which they may have. There is no showing that the court abused its discretion in making the appointment.
[5] The relators also complain that they were given no notice of the proposed appointment. If this was error, it was harmless. Their objections were argued fully on the hearing of their motion to quash the appointment, and as we have said, these objections were without merit.
[6-8] It is next contended that the court exceeded its authority when it appointed counsel to represent the petitioner, a probation officer. Probation officers are county officers (State ex rel. Richardson v. Clark County, 186 Wash. 79, 56 P. (2d) 1023), and it is the duty of the prosecutor to advise such officers. It is also his duty to appear for and represent the state and county in all proceedings in which they may be parties. RCW 36.27.020. It cannot be denied that the state, while it is not named as a party, is the real party in interest in a juvenile court proceeding, for if a child is found to be dependent or delinquent, it is made a ward of the state.
[9, 10] While it is the express duty of the probation officer to represent the interests of the child, this duty is exercised on behalf of the state and county in the pursuit of their common concern for the welfare of the child. In Bates v. School Dist. No. 10, 45 Wash. 498, 88 Pac. 944, we said:
"In this state the prosecuting attorney is also the county attorney, and the relations of that officer to the county may be such as possibly require him to appear in behalf of the county in some instances, even if the specific duty may not be particularly and expressly prescribed by statute. If so, *202 the duty arises out of the obligations he has assumed as an officer of the county to discharge the general functions of an attorney in his [its] behalf."
[11] When in a juvenile court proceeding (which is not intended by the legislature to be adversary in nature) errors of law are urged and the jurisdiction of the court assailed, the probation officer, untrained in and unacquainted with such technical questions, cannot be expected to aid the court in their solution. Nevertheless, the court must dispose of these questions. If the relators are correct in their contention that the court is not to be assisted by the prosecuting attorney and has no inherent power to appoint an attorney in such circumstances, it must resolve them without the assistance of counsel, since the juvenile court act makes no provision for the employment of legal counsel for the court. The effective and orderly conduct of juvenile hearings is a matter with which the state and county are both deeply concerned. The letter and spirit of the statute prescribing the duties of the prosecuting attorney are broad enough to include the duty to assist the court in a juvenile court proceeding when his services are needed.
[12] When the prosecutor declined to appear, the court was authorized to appoint a special prosecutor, under RCW 36.27.030, which provides for the appointment of such a prosecutor when the prosecutor fails, from sickness or other cause, to attend court. The relators insist that this appointment increased their burden. Of course, where only one party is represented by counsel, the burden upon that party is lighter than it is where all parties are represented. However desirable the right to be free of opposing counsel may be, the law does not espouse such a right, for obvious reasons.
[13] Relators assign error to the court's refusal to strike the amended petition. They do not point out wherein the petition was defective, except that it failed to state "facts." While the petition is not drawn with the particularity of an indictment, it was definite enough to apprise the court and the relators of the conduct which led the petitioner to believe that an inquiry into the child's welfare was justified, *203 and it is not contended that the relators were misled. We find no merit in this assignment of error.
[14] There is also some contention that there is no evidence to support the findings of fact. While some of the testimony regarding the boy's past conduct was vague, and some of the witnesses were contradicted on details by other witnesses, we observe that the trial court made no findings on the unsubstantiated evidence. Those findings which were made are amply supported, and the court was justified in concluding that the welfare of the boy required that some action be taken.
[15] The program approved by the court involved a minimum of interference by the court and the social agency. When the parents indicated their unwillingness to co-operate, the court was left with no choice but to place the boy in an environment where his needs would be recognized and a genuine effort would be made to correct his difficulties. While the order of the trial court is affirmed, the jurisdiction of the court will continue. The court is free, of course, to modify its order if the co-operation of the parents warrants such action.
The order is affirmed.
HILL, C.J., DONWORTH, OTT, and FOSTER, JJ., concur.
January 30, 1958. Petition for rehearing denied.
NOTES
[1] Reported in 316 P. (2d) 907.