IN RE: SALARIES FOR PROBATION OFFICERS OF
BERGEN COUNTY—1970-1971.

Argued April 5, 1971—Decided June 7, 1971.

. *Mr. Edwin C. Eastwood, Jr.,* Assistant County Counsel, argued the cause for appellant, Bergen County Board of Freeholders (*Mr. Michael J. Ferrara,* Bergen County Counsel, attorney; Mr. Eastwood, of counsel; *Mr. Ronald Lo-Lordo,* Asst. Bergen County Counsel, on the brief).

*Mr. David S. Litwin,* Deputy Attorney General, argued the case for respondents, Bergen County Judges (*Mr. George F. Kugler, Jr.,* Attorney General of New Jersey, attorney; *Mr. Stephen Skillman,* Assistant Attorney General, of counsel; *Mr. Litwin,* on the brief).

*Mr. Abraham L. Friedman* filed a statement in lieu of brief on behalf of respondent, American Federation of State, County and Municipal Employees, AFL-CIO, Local 1970, Bergen County Probation Officers Chapter (*Messrs. Rothbard, Harris and Oxfeld,* attorneys).

The opinion of the Court was delivered by

MOUNTAIN, J. On July 30, 1970 the Judges of the Bergen County Court, acting pursuant to *N. J. S. A.* 2A:168–8, entered an order fixing salaries, fringe benefits and working conditions for probation officers of Bergen County with respect to the years 1970 and 1971. The Board of Freeholders of Bergen County, which would be required to supply the funds to meet these obligations, took an appeal from this order and we certified the case on our own motion. *R.* 2:12–1.

Rather prolonged negotiations, commencing in December, 1968, preceded the entry of the order. During these negotiations the probation officers were represented by the American Federation of State, County and Municipal Employees, AFL-CIO, Local 1970, Bergen County Probation Officers Chapter, which was recognized as their exclusive representative for purposes of collective negotiation under the New Jersey . Employer-Employee Relations Act. *N. J. S. A.* 34:13A–5.3. At first a single County Court Judge acted

for all the judges. Later the Assistant Director for Probation in the Administrative Office of the Courts took his place. A representative of the Board of Freeholders attended certain of the negotiating sessions and was otherwise kept advised of the progress being made. An agreed stipulation of facts setting forth chronologically the course of negotiations forms part of the record and clearly establishes the absence of any factual dispute. Rather the County challenges the action taken on legal grounds of a fundamental nature.

In New Jersey probation officers are appointed by judges of the county court, *N. J. S. A.* 2A:168–5, who are also authorized to fix their salaries. *N. J. S. A.* 2A:168–8. A principal argument advanced by the County on this appeal is that this statutory arrangement should be declared illegal since it improperly interferes with the exercise of the judges' judicial duties. It is pointed out that as a result of this legislative scheme, the judges of the various county courts are burdened with the necessity of negotiating employment contracts, that this preoccupation may well diminish their judicial effectiveness and that furthermore it casts upon them responsibilities and tasks in no way germane to the judicial function. We disagree for the reasons to be discussed.

It may be conceded that the appointment of probation officers and the fixing of their salaries are not, at least in the purest sense, judicial acts. But the doctrine of the separation of powers was never intended to create, and certainly never did create, utterly exclusive spheres of competence. The compartmentalization of governmental powers among the executive, legislative and judicial branches has never been watertight.

It is simply impossible for a judge to do nothing but judge; a legislator to do nothing but legislate; a governor to do nothing but execute the laws. The proper exercise of each of these three great powers of government necessarily includes some ancillary inherent capacity to do things which are normally done by the other departments

Thus, both the legislative department and the judicial department have certain housekeeping chores which are prerequisite to the exercise of legislative and judicial power. And to accomplish these houskeeping chores, both departments have inherently a measure of administrative authority not unlike that primarily and exclusively vested in the executive department. [*Judges for Third Judicial Cir. v. County of Wayne*, 383 *Mich.* 10, 172 *N. W.* 2d 436, 440 (1969)]

In appointing probation officers and in fixing their salaries the county judges act as legislative agents. *Vanderwart v. Dept. of Civil Service*, 19 *N. J.* 341 (1955); *In re Application of Bigley*, 55 *N. J.* 53, 57, 61 (1969); *In Matter of Application of Schragger*, 58 *N. J.* 274 (1971). Such legislative delegation to judicial officers is sanctioned by long usage and although the judiciary is not required to accept such delegation should it appear incongruous or unduly burdensome, *Massett Building Co. v. Bennett*, 4 *N. J.* 53, 61 (1950); *In Matter of Application of Bruce M. Schragger*, *supra*, no such objection exists here.

It should be noted that our statutory scheme requires the county court judges to afford the board of freeholders of the county notice as well as an opportunity to be heard both as to the necessity of a particular appointment, *N. J. S. A.* 2A:168–5, and as to the amounts of annual salaries, *N. J. S. A.* 2A:168–8. These salutary provisions give to those who must find the means to pay an opportunity to make known and discuss any fiscal problems that the added expenditure may invite before the commitment is finally made. But the ultimate decision rests with the judges.

In a number of other states, statutes give judges the right to appoint probation officers, subject to the approval of the county. Such statutes have been uniformly interpreted to limit the power of the county effectively to disapprove to those cases where there has been a showing that the action of the judges was arbitrary, capricious or unreasonable. Absent such proof, the county has been denied the right to challenge successfully the action of the judge or judges. *Noble County Council v. State*, 234 *Ind.* 172, 125 *N. E.* 2d 709

(1955); *Smith v. Miller,* 153 *Colo.* 135, 384 *P.* 2d 738 (1963); *Birdsall v. Pima County,* 106 *Ariz.* 266, 475 *P.* 2d 250 (1970). Other states, quite apart from statute, have held that courts possess the inherent power to appoint probation officers as well as other personnel necessary to a proper administration of justice and to see that they are paid. *State ex rel. Weinstein v. St. Louis County,* 451 *S. W.* 2d 99 (Mo. Sup. Ct. 1970); *Commonwealth ex rel. Carroll v. Tate,* 442 *Pa.* 45, 274 *A.* 2d 193 (1971). Whether justification for the action be found in a statute, or in the inherent power of the courts properly to maintain themselves, we have no doubt that such power exists and that it will be set aside only upon a showing that its exercise was arbitrary, capricious and unreasonable.

■ It is next argued that in voting to expend funds to meet the retroactive salary increases to which the judges agreed, the freeholders would violate the Local Budget Law, *N. J. S. A.* 40A:4–1 *et seq.,* which forbids the incurring of liabilities or the expenditure of money for which no appropriation has been made, *N. J. S. A.* 40A:4–57, and would likewise violate *N. J. S. A.* 2A:135–5 which makes such action a misdemeanor. There would indeed be such violations were the Freeholders to meet the required payments without first making the necessary appropriation. Although no appropriation for this expense appeared in the regular budget, the matter can readily be handled by the adoption of an emergency appropriation pursuant to *N. J. S. A.* 40A:4–46, which reads, in pertinent part,

A local unit may make emergency appropriations, after the adoption of a budget, for a purpose which is not foreseen at the time of the adoption thereof, or for which adequate provision was not made therein. Such an appropriation shall be made to meet a pressing need for public expenditure to protect or promote the public health, safety, morals or welfare * * *.

Quite clearly the provision that was made in the regular budget to meet this need has proven inadequate and the statute

is applicable. Upon making the necessary emergency appropriation, the Freeholders can then meet the obligation without fear of violating the statutes to which reference has been made above.

■ Particular provisions of the agreement of July 30, 1970 are attacked as exceeding the authority to fix salaries and provide for necessary and reasonable expenses as set forth in *N. J. S. A.* 2A:168-8. These are the following:

A. Probation officers who are required to remain on duty through the supper hour to accept reports of probationers are entitled to a meal allowance of three dollars.

B. When an officer uses his personal automobile in connection with the performance of his official duties and functions, he shall receive a reimbursement allowance of twelve cents per mile.

C. Officers shall continue to receive pay while participating in approved in-service training programs.

D. Officers who become ill and exhaust their sick leave credits may request and shall be permitted to use accrued vacation credits during such period of illness.

E. Increased vacation and sick-leave allowances, improved hospitalization and medical coverage that may be granted to other county employees during the period of the agreement shall automatically be made available to probation officers.

F. A selected union steward may attend national and state meetings of the union for a period not in excess of five (5) days each year, provided the proposal to attend is reasonable and will "not interfere with the officer's official duties and functions."

G. Probation officers after permanent appointment may reside anywhere in the State of New Jersey, as long as such residence is within a reasonable distance of the location of the probation department.

The granting of a mileage allowance is no more than effecting reimbursement for necessary expenses, a point specifically covered by *N. J. S. A.* 2A:168-8.

That officers should be paid while pursuing an approved in-service training program is so obvious as to merit but little comment. It is not conceivable that an officer could be directed to participate in such a program but at the same time be temporarily dropped from the payroll.

The benefits described in A, D and E above are normal concomitants of the employer-employee relationship as it presently exists. Employment is not today simply a matter of fixing a wage; it goes far beyond this both in the public and private sectors. In delegating to county judges the power and duty to enter into employment arrangements with probation officers, the Legislature must have recognized that such arrangements might well include these kinds of normal fringe benefits commonly incident to public and private employment alike.

The provision permitting a union representative to attend state and national meetings is said to violate *N. J. S. A.* 38:23–2. This statute directs that public employees may have a leave of absence with pay, limited to five days, to attend state or national conventions of certain organizations. These, some thirty-five in number, are then listed in the statute. The argument is that since the union of which the probation officers are members is not listed among these organizations, that therefore no authority exists on the part of a public employer to enter into such an agreement with the union. We cannot accept this conclusion. This statutory provision appears in Title 38—*Mililia—Soldiers, Sailors and Marines*—and has nothing to do with labor relations. All except two of the organizations enumerated in the statute are patriotic in nature. We discern here no legislative intent to limit the freedom of union representatives to negotiate for and secure the right to attend, under reasonable conditions, state and national meetings of their union.

In challenging the validity of the provision authorizing residence outside of the county, the Freeholders rely upon *N. J. S. A.* 40:11–1, which reads, in pertinent part,

> Except as otherwise provided by law, every person holding an office, the authorities and duties of which relate to a county only, shall reside within the county * * *.

But the authorities and duties of probation officers do not solely relate to a county. They also relate to the state. Thus in *Godfrey v. McGann*, 37 *N. J.* 28 (1962), it was noted that

> The Probation Department in each county operates as an enforcement arm of the *state judicial system.*
>
> [at 34]
>
> [T]hese appointees [probation officers] are viewed as being in the *state service* insofar as appointment is concerned.
>
> [at 35]
>
> [P]robation officers are treated as *state officers* for the purpose of having their salaries fixed. * * * [P]robation officers and employees of the Probation Department cannot be specifically identified as county or state agents.
>
> [at 36; all emphasis added]

Clearly these officers do not come within the limiting provisions of the statute quoted above; the nature of their authorities and duties do not relate to a county only.

Thus we deem the order entered July 30, 1970 by the Judges of the Bergen County Court to have been in all respects proper and it is accordingly affirmed.

*For affirmance*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and MOUNTAIN—7.

*For reversal*—None.