[No. 43485. En Banc. August 28, 1975.]

HELEN ZYLSTRA et al, *Respondents*, v. LILLY PIVA et al, *Appellants*.

*Herbert Gelman* (of *Gelman & Couture*), for appellants.

*Jack G. Rosenow* (of *Comfort, Dolack, Hansler, Hulscher, Rosenow & Burrows*), for respondents.

HAMILTON, J.—This appeal presents the question of whether the Public Employees' Collective Bargaining Act is applicable to employees in juvenile court facilities.

In 1972, a bargaining unit was organized at Remann Hall, the juvenile court facility in Pierce County, by the Washington State Council of County and City Employees, AFL-CIO, Local 120. The unit was organized pursuant to RCW 41.56 (Public Employees' Collective Bargaining Act). Remann Hall employees, represented by the union, negotiated a contract with Pierce County Commissioners which included provisions for hours, wages, and work conditions. After the contract became effective, a monthly deduction for union dues and insurance was made from the salaries of Remann Hall employees. Plaintiffs challenged this contract in Pierce County Superior Court, seeking a declaratory judgment holding the contract null and void because it was not authorized by RCW 41.56. Plaintiffs further sought injunctive relief and damages in the amount of dues paid to the union.

The trial court found that the union was organized with the knowledge of the juvenile court judge, but that em-

ployees of the juvenile court are employees of the state and, therefore, under the doctrine of *Roza Irrigation Dist. v. State*, 80 Wn.2d 633, 497 P.2d 166 (1972), the bargaining act does not apply to them. The court therefore declared the contract void and awarded damages. Defendants appeal. We affirm in part and reverse in part.

■ As a preliminary matter, we note that plaintiffs' failure to exhaust remedies under the bargaining act and under the union contract does not bar their access to the courts. Exhaustion of administrative remedies will not be required where resort to those procedures would be futile. *See Washington Local 104, Boilermakers v. International Bhd. of Boilermakers*, 33 Wn.2d 1, 203 P.2d 1019 (1949). Here, remedies prescribed by either the bargaining act or the contract in question would have been futile where the controversy centers on the applicability of the act and the validity of the contract.

We thus proceed to the question of the applicability of the collective bargaining act to employees of the juvenile court. The purpose of the act is declared by RCW 41.56.010 to be as follows:

> The intent and purpose of this chapter is to promote the continued improvement of the relationship between public employers and their employees by providing a uniform basis for implementing the right of public employees to join labor organizations of their own choosing and to be represented by such organizations in matters concerning their employment relations with public employers.

The bargaining act applies "to any county or municipal corporation, or any political subdivision of the state of Washington . . ." RCW 41.56.020. The act makes the following definitions:

> (1) "Public employer" means any officer, board, commission, council, or other person or body acting on behalf of any public body governed by this chapter as designated by RCW 41.56.020, or any subdivision of such public body.

(2) "Public employee" means any employee of a public employer except any person (a) elected by popular vote, or (b) appointed to office pursuant to statute, ordinance or resolution for a specified term of office by the executive head or body of the public employer, or (c) whose duties as deputy, administrative assistant or secretary necessarily imply a confidential relationship to the executive head or body of the applicable bargaining unit, or any person elected by popular vote or appointed to office pursuant to statute, ordinance or resolution for a specified term of office by the executive head or body of the public employer.

. . .

(4) "Collective bargaining" means the performance of the mutual obligations of the public employer and the exclusive bargaining representative to meet at reasonable times, to confer and negotiate in good faith, and to execute a written agreement with respect to grievance procedures and collective negotiations on personnel matters, including wages, hours and working conditions, which may be peculiar to an appropriate bargaining unit of such public employer, except that by such obligation neither party shall be compelled to agree to a proposal or be required to make a concession unless otherwise provided in this chapter.

Defendants contend that plaintiffs are employees of Pierce County. Under the provisions of the statute, as quoted above, the collective bargaining act applies to counties, and the Pierce County Commissioners would qualify as public employers; the employees would therefore be eligible to organize for the purpose of collective bargaining pursuant to RCW 41.56. Plaintiffs reply, and the trial court agreed, that they are employees of the Pierce County Superior Court, and thus of the state judicial branch; as such, they are employees of the state, not of the county, and are excluded from the applicability of the collective bargaining act. Our holding in *Roza Irrigation Dist. v. State, supra*, if applicable, would support this result. We there held at page 638:

It appears evident, however, that the legislature did not intend to include employees of the state itself, but rather

employees at the local level, since state employees are not referred to in RCW 41.56.020 . . .

██ Plaintiffs' employment bears a substantial relationship to both Pierce County and the judicial branch. Under RCW 13.04.040,[1] compensation for juvenile court probation counselors and detention staff is to be fixed and paid by the county. Probation officers have been held to be county officers. *In re Lewis*, 51 Wn.2d 193, 316 P.2d 907 (1957); *State ex rel. Richardson v. Clark County*, 186 Wash. 79, 56 P.2d 1023 (1936).

However, RCW 13.04.040 also provides that juvenile court employees are to be hired, controlled, and discharged by the judges of the court. The traditional test of employer-employee relationship in Washington is the right of control. *James v. Ellis*, 44 Wn.2d 599, 269 P.2d 573 (1954).

---

[1]"The court shall, in any county or judicial district in the state, appoint or designate one or more persons of good character to serve as probation counselors during the pleasure of the court. In case a probation counselor shall be appointed by any court, the clerk of the court, if practicable, shall notify him in advance when a child is to be brought before said court. The probation counselor shall make such investigations as may be required by the court. The probation counselor shall inquire into the antecedents, character, family history, environments and cause of dependency or delinquency of every alleged dependent or delinquent child brought before the juvenile court and shall make his report in writing to the judge thereof. He shall be present in order to represent the interests of the child when the case is heard; he shall furnish the court such information and assistance as it may require, and shall take charge of the child before and after the trial as may be directed by the court.

"All probation counselors shall possess all the powers conferred upon sheriffs and police officers to serve process and make arrests for the violation of any state law or county or city ordinance, relative to the care, custody, and control of delinquent and dependent children.

"The court may, in any county or judicial district in the state, appoint one or more persons who shall have charge of detention rooms or house of detention.

"The probation counselors and persons appointed to have charge of detention facilities shall each receive compensation which shall be fixed by the board of county commissioners, or [in] cases of joint counties, judicial districts of more than one county, or joint judicial districts such sums as shall be agreed upon by the boards of county commissioners of the counties affected, and such persons shall be paid as other county officers are paid." RCW 13.04.040.

Thus, plaintiffs are hired and fired by the juvenile court judges, and are compensated by the county. We conclude that, for the purposes of the applicability of the collective bargaining act, plaintiffs may be classed as having a dual status: They are employees of the county for purposes of negotiating matters relating to wages, including benefits relating directly to wages such as medical insurance. Thus, wage negotiations with the Board of County Commissioners are appropriately controlled by the provisions of the bargaining act. However, for purposes of hiring, firing, working conditions, and other matters necessarily within the statutory responsibility of the juvenile court judges, plaintiffs are employees of the court and thus of the State's judicial branch. Adhering to the doctrine of *Roza Irrigation Dist. v. State, supra,* these matters do not fall within the purview of the bargaining act.

■ Our solution seeks to preserve for these employees as large a sphere of collective bargaining as possible, in accord with the stated purpose of the bargaining act. RCW 41.56.010. We do not believe that our approach creates a conflict between branches of government and thereby violates the doctrine of separation of powers. Our holding is limited to determining that, for purposes of wage bargaining, plaintiffs are employees of the county and may invoke the bargaining rights granted by the bargaining act. Nothing in our approach diminishes the final control of the judiciary over all necessary court functions. The remote contention that the collective bargaining process may result in salary levels inadequate to attract and retain competent personnel rests on the premise that, by permitting court employees to bargain with their paymaster (the county), the judicial branch thereby relinquishes its inherent power to control and administer its functions. The court cannot, of course, relinquish either its power or its obligation to keep its own house in order. In the unlikely event that the county refused adequate salary funds, the court would be both obliged and empowered to protect its proper function-

ing and see to the effective administration of justice. *O'Coin's, Inc. v. Treasurer*, .......... Mass. .........., 287 N.E.2d 608 (1972). The legislature may provide by statute for the compensation of judicial employees. *See Griffiths v. State*, 28 Wn.2d 493, 183 P.2d 821 (1947); *Leahey v. Farrell*, 362 Pa. 52, 66 A.2d 577 (1949); 16 C.J.S. *Constitutional Law* § 116. However, such a legislative enactment does not in any way impair the inherent power of the judiciary to require payment of necessary funds for the efficient administration of justice. *Leahey v. Farrell, supra; Commonwealth ex rel. Carroll v. Tate*, 442 Pa. 45, 274 A.2d 193 (1971); *Noble County Council v. State ex rel. Fifer*, 234 Ind. 172, 125 N.E.2d 709 (1955). In *Leahey v. Farrell, supra* at 57, the Pennsylvania court noted the presumption that " 'public officers will perform a public trust,' " and stated:

> Should Commissioners, however, neglect or refuse to furnish funds, or sufficient funds, for reasonable judicial functions, and in consequence the efficient administration of the judicial branch of the government is thereby impaired or destroyed, the courts possess the inherent power to require such necessities to be furnished and to direct payment therefor out of the public treasury . . .

*Leahey v. Farrell, supra* at 57-58. *See also Inherent Power of Court to Compel Appropriation or Expenditure of Funds for Judicial Purposes*, Annot., 59 A.L.R.3d 569, 573 (1974).

■ The fact that the juvenile court is a creation and creature of the legislature and is not, per se, a constitutional court lends further support to our view. Just as the legislature's creation of the juvenile court does not interfere with or diminish the inherent and equitable power of the superior court to exercise jurisdiction for the welfare of juveniles, a legislatively created bargaining scheme does not and cannot interfere with the ultimate power of the judiciary to administer its own affairs. Until and unless such a scheme interferes with the court's functioning, no separation-of-powers problem exists. If and when such an interference occurs, the ultimate power to administer the

courts clearly rests with the judiciary. This does not make of the court a final arbiter in the collective bargaining process; it but recognizes the undiminished role of the judiciary as an independent and equal coordinate branch of government.

The doctrine of separation of powers does not create exclusive spheres of competence in each branch.

> But the doctrine of the separation of powers was never intended to create, and certainly never did create, utterly exclusive spheres of competence. The compartmentalization of governmental powers among the executive, legislative and judicial branches has never been watertight.

*In re Salaries for Probation Officers of Bergen County*, 58 N.J. 422, 425, 278 A.2d 417 (1971).

Harmonious cooperation among the three branches is fundamental to our system of government. Only if this cooperation breaks down is it necessary for the judiciary to exercise inherent power to sustain its separate integrity. *Commonwealth ex rel. Carroll v. Tate, supra.* Cooperation among all three branches is involved in permitting these employees to bargain in relation to wages. The question to be asked is not whether two branches of government engage in coinciding activities, but rather whether the activity of one branch threatens the independence or integrity or invades the prerogatives of another. We can find no such encroachment, actual or threatened, in permitting these employees to bargain on the question of wages.

In conclusion, we accordingly find that those portions of the collective bargaining agreement here involved which are wage related are permissible, and those portions relating to other than wages and direct wage-related benefits are ultra vires and void.[2]

That portion of the judgment invalidating the contract in toto and awarding damages is reversed; that portion which

---

[2] The effect of partial invalidity upon the continuing effectiveness of the existing contract has not been briefed or argued; hence, we express no view upon any question related thereto.

invalidates the contract as to hiring, firing, and working conditions and denies defendant Piva attorney fees is affirmed. The parties will bear their own costs.

FINLEY, ROSELLINI, HUNTER, and BRACHTENBACH, JJ., concur.

FINLEY, J. (concurring)—In the field of criminal law some form of probation, (a) deferral of sentence, or (b) the imposition and suspension of sentence, and (c) the release of a criminal defendant under prescribed conditions subject to some kind of supervision probably has existed for a long time—usually as an adjunct of the courts or the judicial branch of government. Probation in a very modern sense has, of course, become a recognized procedure in modern criminal law administration. Usually it has been an adjunct of the courts or the judicial branch. In any event, however, I see no reason to characterize probation absolutely as an inherent or otherwise inevitable adjunct or function of the courts or the judicial branch of government. Modern prison administration is certainly not regarded in any absolute sense as a part of the court system and the judicial branch of government. I can see no really fundamental stresses or strains, or prohibitions based on the so-called separation of powers doctrine, if the legislature should provide that probation would be granted, supervised, and administered not by the courts but by an independent agency of government or by possibly the State Parole Board. Based upon this thesis I see no problems as to the present juvenile probation system established by the state legislature. In other words, as pointed out in the majority opinion by Hamilton, J., RCW 13.04.040 provides that compensation for juvenile court probation counselors and detention staff is to be fixed and paid by the county. Also, as stated in the majority opinion, such offices have been held to be county offices. *In re Lewis*, 51 Wn.2d 193, 316 P.2d 907 (1957). Furthermore, as pointed out in the majority opinion, RCW 13.04.040 provides that juvenile court

employees are to be hired, controlled, and discharged by the judges of the court. From the foregoing, it follows, as emphasized by the majority, that probation officers or counselors and other personnel have a dual status. As to wages and other benefits they are employees of the county and the collective bargaining act is applicable. As to hiring, firing, working conditions and related matters, they are employees of the juvenile court and of the state's judicial branch of government, and the act is not applicable.

For the reasons stated, I concur in the majority opinion.

WRIGHT, J., concurs with FINLEY, J.

UTTER, J. (concurring)—The doctrine of separation of powers found its first clear expression in the writing of Baron de Montesquieu, where in *Spirit of the Laws* (1748), he noted:

> When the legislative and executive powers are united in the same person or body, there can be no liberty, because apprehension might arise lest the same monarch or senate should enact tyrannical laws, to execute them in a tyrannical manner.
>
> Again, there is no liberty, if the judiciary power be not separate from the legislative and executive. Were it joined with the legislative, the life and liberty of the subject would be exposed to arbitrary control; for the judge would be then the legislator. Were it joined to the executive power, the judge might behave with violence and oppression.
>
> There would be an end of everything, were the same man or the same body, whether of the nobles or the people, to exercise those three powers, that of enacting the laws, that of executing the public resolutions, and of trying the cases of individuals.

Ervin, *Separation of Powers: Judicial Independence*, 35 Law & Contemp. Prob. 108, at 109 (1970). In England the development of the doctrine of judicial independence preceded our constitutional convention. In 1701, Parliament passed the Act of Settlement, the principal statute dealing with judicial tenure in England and the one substantially

followed there since that time. That act provided for tenure during good behavior and established the foundation of the modern English judicial system. Ervin, *Separation of Powers: Judicial Independence*, 35 Law & Contemp. Prob. 108, at 111 (1970).

In addition to their familiarity with the writing of de Montesquieu and the English Act of Settlement, participants in the constitutional convention in this country had had experiences which led them to express concern over excessive domination by one branch of government over the others. At the Philadelphia convention, James Madison stated, "[E]xperience in all states has evinced a powerful tendency in the legislature to absorb all power into its vortex. This was the real source of danger to the American [state] Constitutions; and suggested the necessity of giving every defensive authority to the other departments that was consistent with republican principles." Ervin, *Separation of Powers: Judicial Independence*, 35 Law & Contemp. Prob. 108, at 113 (1970). (F. Green, *Constitutional Development in the South Atlantic States, 1776-1860*, at 103 (1930)). No specific clause in the constitution was inserted separating the powers of government among the three branches. They were classified and assigned to the respective departments, however, and the principle of separation of powers was firmly established. The function of this concept was best described by Madison in The Federalist No. 51, at 320-22 (New Am. Library ed. 1961) (J. Madison):

> To what expedient, then, shall we finally resort, for maintaining in practice the necessary partition of power among the several departments as laid down in the Constitution?
>
> . . .
>
> . . . [T]he great security against a gradual concentration of the several powers in the same department consists in giving to those who administer each department the necessary constitutional means and personal motives to resist encroachments of the others. . . . Ambition must be made to counteract ambition. The interest of the man must be connected with the constitutional rights of the place.

The doctrine of separation of powers is not confined to the federal constitution. As noted by Justice William O. Douglas in *The Anatomy of Liberty, The Rights of Man Without Force* (1963), at page 54:

> Six of the original states explicitly affirmed the doctrine of the separation of powers. Today the theory is formally announced in about forty state constitutions. The other states make no such formal declaration; nor does the Constitution of the United States. Yet the same result is reached because these other states' constitutions, as the federal constitution, create three departments of government, vesting the executive power in one, the legislative power in another, and the judicial power in a third.

Washington is among those states which recognize the separation of powers theory by vesting in its constitution the "judicial power of the state" in a separate branch of government. Const. art. 4, § 1. Having been given this power, the judicial branch is further entrusted with the duty to insure that "[j]ustice in all cases shall be administered openly, and without unnecessary delay." Const. art. 1, § 10. We have recognized and applied the doctrine of separation of powers in *Besselman v. Moses Lake*, 46 Wn.2d 279, 280 P.2d 689 (1955), and *Tacoma v. O'Brien*, 85 Wn.2d 266, 534 P.2d 114 (1975). In furtherance of the principle of separation of powers we have refused to interfere with the executive branch of the government (*State v. International Typographical Union*, 57 Wn.2d 151, 356 P.2d 6 (1960); *State v. Fair*, 35 Wash. 127, 76 P. 731 (1904)), or with the legislative branch (*Hoppe v. State*, 78 Wn.2d 164, 469 P.2d 909 (1970); *Seattle v. Hill*, 72 Wn.2d 786, 435 P.2d 692 (1967)), and insisted that those branches do not usurp the functions of this one. *Tacoma v. O'Brien, supra.*

For the courts to effectively maintain their independence as a separate branch of government, they must have the power to do all things that are reasonably necessary for the proper administration of their office within the scope of their jurisdiction. This includes not only the power to con-

trol the decision making and the adjudicatory process, but also the ancillary functions which are subordinate to the decision making process.

It is simply impossible for a judge to do nothing but judge; a legislator to do nothing but legislate; a governor to do nothing but execute the laws. The proper exercise of each of these three great powers of government necessarily includes some ancillary inherent capacity to do things which are normally done by the other departments.

Thus, both the legislative department and the judicial department have certain housekeeping chores which are prerequisite to the exercise of legislative and judicial power. And, to accomplish these housekeeping chores both departments have inherently a measure of administrative authority not unlike that primarily and exclusively vested in the executive department.

The inherent power of the judiciary is a judicial power, but only in the sense that it is a natural necessary concomitant to the judicial power.

The inherent power of the Court is non-adjudicatory. It does not deal with justiciable matters. It relates to the administration of the business of the Court.

*Wayne Circuit Judges v. Wayne County*, 383 Mich. 10, 20-21, 172 N.W.2d 436 (1969), *modified on other grounds*, 386 Mich. 1, 190 N.W.2d 228 (1971).

Even without statutory enactment, the judiciary possesses all powers necessary for the free and untrammeled exercise of its functions. *Board of Comm'rs v. Stout*, 136 Ind. 53, 62, 35 N.E. 683, 685 (1893). The constitutional provision in our state vesting judicial power in the courts carries with it, by necessary implication, the authority necessary to the exercise of that power. Such authority is not limited to adjudication, but encompasses certain ancillary functions, such as rule making and judicial administration, which are essential if the courts are to carry out their constitutional mandate. *O'Coin's Inc. v. Treasurer*, .......... Mass. .........., 287 N.E.2d 608, 611 (1972). To perform these functions courts must have the ability to determine and compel payment of those sums of money which are reason-

able and necessary to carry out their mandate and duty to administer justice if they are to be in reality a coequal independent branch of our government. *Commonwealth ex rel. Carroll v. Tate*, 442 Pa. 45, 52, 274 A.2d 193, 197 (1971).

In the exercise of their power to determine and compel payment of sums of money "the inherent power of courts is not exhausted when the needs of administration of justice have been declared and urged upon the legislative councils. There remains a narrower area in which the courts have inherent power to go further than merely declare the existence of a need. It is an area in which the courts have inherent power to bind the State or the county contractually." *Wayne Circuit Judges v. Wayne County, supra* at 22. Courts in other states have frequently extended these principles to disputes concerning their responsibility for juvenile courts. Several have held specifically that courts possessed the inherent power to appoint probation officers and other personnel necessary to a proper administration of justice and to see that they are paid. *State ex rel. Weinstein v. St. Louis County*, 451 S.W.2d 99 (Mo. 1970); *Commonwealth ex rel. Carroll v. Tate*, 442 Pa. 45, 274 A.2d 193 (1971); *Noble County Council v. State ex rel. Fifer*, 234 Ind. 172, 125 N.E.2d 709 (1955). As the court noted in *In re Salaries for Probation Officers*, 58 N.J. 422, 425, 278 A.2d 417 (1971):

It may be conceded that the appointment of probation officers and the fixing of their salaries are not, at least in the purest sense, judicial acts. But the doctrine of the separation of powers was never intended to create, and certainly never did create, utterly exclusive spheres of competence. The compartmentalization of governmental powers among the executive, legislative and judicial branches has never been watertight.

In *Noble County Council v. State ex rel. Fifer, supra,* the court recognized that its ability to appoint a probation officer and fix his salary within reasonable standards and to require appropriation and payment of it did not rest upon

legislative authorization but on its inherent power. The court stated, at page 181:

These mandates [constitutional mandates to administer justice completely, speedily and without delay] necessarily carry with them the right to quarters appropriate to the office and personnel adequate to perform the functions thereof. The right to appoint a necessary staff of personnel necessarily carries with it the right to have such appointees paid a salary commensurate with their responsibilities. The right cannot be made amenable to and/or denied by a county council or the legislature itself.

For these reasons I believe the courts clearly possess the power necessary to properly insure they can function efficiently as a separate branch of government. I can concur in the majority opinion because there is no contention that the salaries established by the collective bargaining process are inadequate to attract competent personnel, and the court's approval of the salary structure may be implied. Without this approval, express or implied, there would be a violation of the separation of powers doctrine inasmuch as inadequate staffing can cripple the ability of the courts to perform their established functions.

STAFFORD, C.J., and HUNTER and HOROWITZ, JJ., concur with UTTER, J.