161 N.J. Super. 483 (1978)
391 A.2d 1255
IN RE THE MATTER OF THE COURT REORGANIZATION PLAN OF HUDSON COUNTY.
Superior Court of New Jersey, Appellate Division.
Argued July 18, 1978.
Decided August 4, 1978.
*487 Before Judges MILMED, LARNER and ARD.
Mr. Harold Krieger, Hudson County Counsel, argued the cause for appellants Edward F. Clark, Jr., Hudson County Executive, and Board of Chosen Freeholders of Hudson County (Mr. Frank T. Koserowski, Assistant County Counsel and Ms. Kathleen M. Grant, Assistant County Counsel, on the brief).
Mr. Michael Cole, Assistant Attorney General, argued the cause for respondent, the Honorable Thomas S. O'Brien, Assignment Judge of Hudson County (Mr. John J. Degnan, Attorney General of New Jersey, attorney; Ms. Erminie L. Conley, Assistant Attorney General, of counsel; Mr. Stacy L. Moore, Jr., Deputy Attorney General, on the brief).
The opinion of the court was delivered by LARNER, J.A.D.
This appeal arises out of a series of 16 orders issued by the Assignment Judge of Hudson County in his administrative capacity in implementation of the reorganization of the assignment procedures of civil and criminal causes in that county. We stayed the implementation of these orders pending disposition of the appeal and considered the merits of the same on an accelerated basis because of the importance of an early determination to the efficient functioning of the courts of Hudson County. The orders pertain to personnel designated as assistants to the assignment judge pursuant to the authority vested in him by R. 1:33-3(b) as the chief of the judicial system in the county. The orders deal with two categories of designated assistants, one in which the appointees have been acting in that capacity in the past, and the other in which employees in another *488 capacity have been designated as assistants to the assignment judge with different duties and responsibilities. The orders not only designate the personnel to serve as assistants, but also establish their salaries for the current year, commencing July 1, 1978.
The record abundantly demonstrates that the assignment judge and his court administrator sought to achieve the reorganization plan encompassing the assignments and salary designations through normal channels of submission to the county executive and board of chosen freeholders and their representatives on numerous occasions over a long period of time. It was only when such efforts proved fruitless and the county officials failed to approve or implement the requests of the assignment judge that he undertook the drastic remedy of issuing an order to show cause why the county officials should not be ordered to process and implement the changes in personnel and salaries.
This order to show cause merely served as the mechanism for granting the county executive and board of chosen freeholders an opportunity to be heard and voice their objections on the question of the proposed order. The order, however, was a purely administrative one issued by the judge in his administrative capacity rather than his judicial capacity. And although a hearing was not essential at that stage of the proceeding, the opportunity for the same reflects the sensible consideration of one public official for others where the proposed action may have an impact on the discharge of the responsibilities by such other public officials. See In re Petit Jury Panels, Essex County, 60 N.J. 554, 563-564 (1972).
The dichotomy between administrative and judicial action of the assignment judge becomes significant on this appeal only because of appellants' contention that due process was not afforded to them in view of the failure of Judge O'Brien to disqualify himself at the hearing. This contention is manifestly without merit since it is based upon a mistaken view of the role of an assignment judge in this administrative *489 function relating to court personnel. The hearing itself was not mandated by the due process requirements of proceedings involving adjudications between litigants. As already noted, appellants were granted a hearing as a gratuitous gesture and Judge O'Brien did not undertake to decide a justiciable controversy; nor did he sit in review of his own action. He simply used the public forum of a courtroom to hear the views of the county officials and to express his reasons for the issuance of the administrative order. This fully accords with fundamental fairness in this area of judicial administration, preserving the right of the aggrieved parties to seek review by appeal to this court.
Although appellants initially took the position that the assignment judge was compelled to accept as his assistants under R. 1:33-3(b) those employees on the county clerk's payroll who may be assigned by the county clerk, at oral argument their counsel conceded the indisputable precept that the assignment judge has exclusive power to designate as assistants those employees of the courts whom he feels would best serve the judicial system. The issue on this appeal has thus been narrowed to the question whether the assignment judge has the power to fix the compensation to be paid by the county to those whom he appoints as his assistants under R. 1:33-3(b), which provides:
To assist him, he [the assignment judge] may designate, to serve at his pleasure, from among the court clerks and other employees of the courts in the county such assignment clerks and other assistants as he may deem necessary or desirable.
And if he has that power, where does the burden lie as to proof of reasonableness and necessity for the salaries fixed by him?
Prior to our consideration of the legal aspects of this issue, we pause to observe that the record before us amply supports the need for the reorganization plan proposed by the assignment judge. It is not in our province to determine whether any plan, experimental or otherwise, should or *490 should not be instituted in any county relating to the control of calendaring and assignment of criminal and civil causes, or whether a plan selected by an assignment judge is the best or most efficacious means of improving the administration of justice. The assignment judge, as the chief administrator of the county judicial system, under the overall aegis of the Supreme Court, has extensive powers and discretion to undertake new techniques and methods which he may deem appropriate to carry out his functions and responsibilities (see R. 1:33-3(a)) subject, of course, to the direction, if any, of the Supreme Court. In doing so he is not required to seek the prior imprimatur of the Supreme Court, as suggested by appellants, since that court has already delegated that power by the cited rule which it has adopted. And, what is more certain, he need not obtain the stamp of approval of the members of the county government in doing that which he deems appropriate to carry out his functions of administration.
The judicial power is vested in the courts of this State by the Judicial Article of the New Jersey Constitution (Art. VI, § 1, ¶ 1) and the Supreme Court is empowered to make rules governing the administration of all courts (Art. VI, § 2, ¶ 3). Accordingly, the Supreme Court, through R. 1:33-3(a) and (b), has delegated to the assignment judges of the State the broad powers of administration encompassed therein. Whether it be the Supreme Court directly or the assignment judge as its alter ego in the county, this power and authority encompasses all facets of the internal management of our courts. See Passaic Cty. Probation Officers' Ass'n v. Passaic Cty., 73 N.J. 247, 251-255 (1977). In re Brennan, 126 N.J. Super. 368, 374-375 (App. Div. 1974); Lichter v. Monmouth Cty., 114 N.J. Super. 343, 348-349 (App. Div. 1971).
Under the basic principle of separation of powers underlying our State and Federal Governments, this judicial power must be untrammeled and independent of interference by the other branches of government, executive or legislative. *491 Despite this doctrine of separation of powers, however, the functioning of government defies practical implementation by the creation of water-tight compartments for each branch of government. See In re Salaries for Probation Officers of Bergen Cty., 58 N.J. 422, 425-426 (1971). As one judge succinctly expressed it:
It is the imperfection of human institutions which gives rise to our notion of inherent power. It is simply impossible for a judge to do nothing but judge; a legislator to do nothing but legislate; a governor to do nothing but execute the laws. The proper exercise of each of these three great powers of government necessarily includes some ancillary inherent capacity to do things which are normally done by the other departments. [Judges for Third Judicial Cir. v. County of Wayne, 383 Mich. 10, 172 N.W.2d 436, 440 (Sup. Ct. 1969)]
It follows that a court, and in this case the assignment judge in his administrative capacity, has the inherent power to provide the facilities, personnel and resources reasonably necessary for the performance of the judicial functions in the county. And as a corollary thereof he must have the power to compel the appropriation and expenditure of funds by the coequal executive and legislative branches of government to accomplish such purpose, subject only to bounds of reasonable discretion. See Hazard, McNamara and Sentilles, "Court Finance and Unitary Budgeting," 81 Yale L.J. 1286, 1287-1291 (1972); Vanderbilt, The Doctrine of Separation of Powers and Its Present-day Significance (1953); Annotation, "Inherent Power of Court to Compel Appropriation or Expenditure of Funds for Judicial Purposes." 59 A.L.R.3d 569 (1974).
We should emphasize at this point that this inherent power should be exercised very sparingly, in deference to the prerogatives of the legislative and executive branches. It should be invoked by the judicial branch only where necessary personnel and facilities are not provided by the other branches of government through the traditional and conventional methods. "The separation-of-powers doctrine contemplates *492 that the several branches will cooperate to the end that government will succeed in its mission." In re Zicarelli, 55 N.J. 249, 264 (1970).
Normally, such methods entail requests by the assignment judge to the board of freeholders and county executive in the form of the proposed judicial budget or particular applications with factual explanations setting forth the figures and needs, together with conferences and presentations which usually result in a satisfactory resolution of the problems involved. However, as in this instance, when these normal channels and methods of cooperative efforts fail and the holders of the purse force a confrontation, the judge has the power to do whatever may be essential to the carrying out of his inherent and constitutional functions.
In applying these principles to the narrow appellate issue herein we conclude that with respect to the fixing of salaries for all the employees designated as assistants to the assignment judge, the latter has the inherent power to establish the compensation for such assistants provided that the quantum thereof is reasonable and appropriate. For cases sustaining the inherent power of the judiciary not only to appoint necessary personnel but to fix their compensation see: Zylstra v. Piva, 85 Wash.2d 743, 747-748, 539 P.2d 823, 826-827 (Sup. Ct. 1975); State ex rel. Weinstein v. St. Louis Cty., 451 S.W.2d 99 (Mo. Sup. Ct. 1970); Judges for Third Judic. Cir. v. Wayne Cty., 386 Mich. 1, 190 N.W.2d 228 (Sup. Ct. 1971); Leahey v. Farrell, 362 Pa. 52, 66 A.2d 577 (Sup. Ct. 1949); Commonwealth ex rel. Carroll v. Tate, 442 Pa. 45, 274 A.2d 193 (Sup. Ct. 1971); McAfee v. State ex rel. Stodola, 258 Ind. 677, 284 N.E.2d 778 (Sup. Ct. 1972); Noble Cty. Council v. State, 234 Ind. 172, 125 N.E.2d 709 (Sup. Ct. 1955); Smith v. Miller, 153 Colo. 35, 384 P.2d 738 (Sup. Ct. 1963); cases collected in Annotation, supra, 59 A.L.R.3d 569; American Bar Association, The Improvement of the Administration of Justice 27 (1971).
*493 In testing whether the designated salaries are reasonable under all the circumstances, there should be taken into consideration the responsibilities and effort involved in the assigned posts, the experience of the individuals, the skill and talent required for each position and all the other usual elements which enter the thought processes of an employer bent upon attracting intelligent and competent personnel to handle the assigned tasks.
The power of the assignment judge to select and assign as his assistants those who satisfy his needs from the coterie of county employees stems from the inherent power of the courts as implemented by R. 1:33-3(b). And although these assistants may remain county employees for the purpose of payment of their remuneration, they nevertheless serve under the control and direction of the assignment judge in the unclassified category and at his pleasure. Similarly, although the financial burdens related to their positions are imposed on the county, nevertheless the assignment judge has the inherent power when necessary to fix their salaries. Such a hybrid status is not unusual under our county government structures. For analogous situations see Dunne v. Fireman's Fund Am. Ins. Co., 69 N.J. 244, 248-249 (1976); In re Bigley, 55 N.J. 53 (1969); Rolleri v. Lordi, 146 N.J. Super. 297 (App. Div. 1977); In re Brennan, supra, 126 N.J. Super. 368; In re Application of Schragger, 58 N.J. 274 (1971).
Appellants also urge that the assignment judge does not have the power to fix the compensation for his assistants because of legislative enactments dealing with the appointment and fixing of salaries of personnel attached to the county clerk's office. They point to N.J.S.A. 40A:9-74, which assigns to the county clerk, a constitutional officer elected by the people, the duty to "select and employ necessary clerks and other employees," and to N.J.S.A. 40A:9-77, which provides that the compensation of all such personnel in the office of the county clerk shall be fixed by the board of chosen freeholders. It is argued that since, *494 under R. 1:33-3(b), the assistants designated by the assignment judge are culled from the court personnel who are on the county clerk's payroll, that only the board of chosen freeholders has the power to fix their compensation and that the order of the assignment judge relating to compensation is therefore ultra vires and void.
As we have already noted, the inherent power of the judiciary stemming from its exclusive control of the courts and their administration is paramount to the right of the legislative or executive branches to interfere therewith. And since this inherent power is derived from constitutional imperatives it must transcend any legislative directives in conflict therewith.
We recognize the wisdom of caution and hesitancy by the judiciary in asserting such power when it conflicts with legislative enactments relating to employees who serve the judicial system. This doctrine of comity and respect for the other branches of government is firmly established as a policy determination by the Supreme Court in Passaic Cty. Probation Officers' Ass'n v. Passaic Cty., supra:
The conclusion is quite inescapable that the constitutional mandate given this Court to "make rules governing the administration of all courts in the State" transcends the power of the Legislature to enact statutes governing those public employees properly considered an integral part of the court system. It has, however, since 1948, been the practice of this Court, with only occasional deviation, to accept and adopt legislative arrangements that have not in any way interfered with this Court's constitutional obligation discussed above. We have every intention of continuing this practice; to do otherwise would be pointless and self-defeating. Only where we are satisfied that the proper exercise of our constitutional responsibility to superintend the administration of the judicial system requires such action would we feel compelled to exert this power in the adoption of a rule at odds with a legislative enactment. We repeat that in the absence of any action by this Court  felt to be constitutionally compelled  and as a matter of comity and respect for other branches of government, we accept and adopt all statutory arrangements touching or concerning the administration of any courts in the State, as well as such legislative enactments as have to do with public employees whose duties are intimately related to the judicial system. [73 N.J. at 255]
*495 In harmony with this admonition, we particularly limit our determination to the facts herein, involving the ambit of power of an assignment judge with respect to those employees designated by him as his assistants under R. 1:33-3(b). We are not called upon at this time and therefore express no opinion on the outer bounds of that power as it may apply to other county employees whose duties are intimately related to the judicial system.
In recognition of this limited scope of the litigation before us, we have no hesitancy in concluding that the constitutionally derived inherent power of the assignment judge to select his own assistants and to fix their salaries transcends the statutory power of the board of chosen freeholders to fix salaries of employees in the office of the county clerk. This conclusion is constitutionally compelled and must obtain as paramount to the general statutory pattern relating to county employees.
Having reached this conclusion, we turn to the issue whether the exercise of power in the fixing of salaries of the 16 assistants involved herein was arbitrary and capricious, for, as with all state administrative decisions, the action of the assignment judge is subject to appellate correction if it is exercised in such a manner as to exceed the bounds of reasonable discretion. As we have commented earlier in this opinion, the record fully supports the need for these assistants within the framework of the reorganization plan conceived by the assignment judge.
We also find that the salaries allocated to the positions and the particular individuals designated to fill those positions fall within the requisite standard of reasonableness. This finding applies both as to those designated for new positions with greater responsibilities and work requirements and as to those who were awarded salary increments in their present positions. Without reference to the factual complex of each position and each assistant it is manifest that the assignment judge, after a careful analysis of the relevant factors, arrived at salary figures appropriate for attracting competent *496 and loyal workers to carry out the important administrative functions assigned to them. In fact, there is some indication that the salaries are considerably below those earned by counterparts in other first-class counties of this State. And simply because these salaries may exceed those negotiated for other county employees or may be utilized by their labor representatives in pending contract negotiations is of no relevancy as to the appropriateness of the orders relating to the small group of special assistants herein who are not represented by the employee unions.
Appellants advance the position that the action below should be reversed because the assignment judge has failed to bear the burden of establishing that the salaries proposed by the board of chosen freeholders are so outrageously low that competent assistants cannot be found among court personnel who will perform the necessary services within the salary range set by the board. They contend that in the absence of such factual proof there is no basis for a finding that the county legislative body has so frustrated the administration of justice as to warrant affirmative action by the assignment judge.
We agree that in view of the statutory pattern relating to salaries of court employees, the burden is on the assignment judge to establish that the appointment of the assistants and the salaries fixed by him are reasonably necessary for the efficient administration of justice. And we hold that this burden has been sustained.
We do not, however, agree with appellants' contention as applied to the facts of this case, that the court must bear the burden of proof that the salaries proposed by the board of chosen freeholders are so inadequate that no county employees can be found to fill the positions and that as a consequence the courts cannot function. Cf. Matter of Salary of Juvenile Director, 87 Wash.2d 232, 552 P.2d 163, 175 (Sup. Ct. 1976); Commonwealth ex rel. Carroll v. Tate, supra, 442 Pa. at 55, 274 A.2d at 199. To impose such a burden on the assignment judge in this sensitive and subjective area of personnel evaluation and fair compensation would be an inappropriate *497 and insurmountable obstacle. There is no doubt that some persons with lesser qualifications can always be found to accept a particular job at any salary, inadequate or not. To require a showing that such candidates are not available from the corps of county employees as a precondition to a finding of reasonableness of the action below would truly interfere with the judicial prerogative to select competent assistants at a fair and reasonable salary.
Where the question of burden of proof arises in the limited context of designation and compensation of special assistants authorized by court rule, and the record supports a prima facie showing of reasonableness and necessity for the administrative action, it behooves the objecting officials to undertake the burden of proving that the court's action is arbitrary and unreasonable. See McAfee v. State ex rel. Stodola, supra, 258 Ind. at 681, 284 N.E.2d at 782.
Neither the record below nor that on appeal presents a semblance of proof by appellants that the judge's orders are arbitrary and beyond the bounds of reasonable necessity. Appellants' bald assertion that they disagree with the salary schedule or that they feel that lesser salaries would be more appropriate from their viewpoint as elected officials does not serve to establish the arbitrariness which is a prerequisite to appellate interference with the assignment judge's administrative discretion. In the absence of abuse of that discretion, this court will not disturb the orders by which the assignment judge exercised his authority.
The decision below is therefore affirmed, and the stay heretofore granted is dissolved.[1]
NOTES
[1] Appellants also moved to expunge from the record certain confidential material sealed by the assignment judge which was obliquely referred to in his findings. This material was not submitted to this court and was not seen or considered by us in the determination of this appeal. As a consequence, the motion to expunge is denied.